Yeager *v.* Wright *et al.*

Filed Oct. 21, 1887.

No. 12,934.

YEAGER *v.* WRIGHT ET AL.

EVIDENCE.—*Transcript.*—*Certification by Justice of Peace.*—*Equivalent Terms.*
—The certification of a transcript by a justice of the peace as "a correct statement of the proceedings had before me in the above entitled case " is the practical equivalent of a statement that the transcript is " a true and complete copy" of such proceedings, and authorizes its admission in evidence.

EXECUTION.—*Dormant Judgment.*—*Validity for Purpose of Execution.*—The validity of a judgment for the purpose of having execution upon it is not impaired because, by the expiration of ten years, it has ceased to be a lien on real estate.

SAME.— *Voidable Execution.* — *Revival of Judgment.* — An execution issued upon a dormant judgment, without a revival or leave of court, is not void, but only voidable as against direct proceedings to have it set aside.

SAME.—*Transcript from Justice of Peace.*— *Filing and Recording.*— *Formal Proof of.*—*Recitals in Execution.*—Where an execution, issued by the clerk of the circuit court, upon a judgment rendered by a justice of the peace,

is admitted in evidence without any objection that there has been no formal proof that the transcript of the judgment has been filed in the clerk's office and entered in the proper order-book and judgment-docket, recitals contained in the execution that such steps had been taken will be held to supply the omission of such formal proof.

From the Gibson Circuit Court.

*H. A. Yeager,* for appellant.

*C. A. Buskirk* and *W. M. Land,* for appellees.

NIBLACK, J.—On the 14th day of March, 1871, Theoph-ilus Wright recovered a judgment against John McIntire before Zenas M. Weed, a justice of the peace of Gibson county, for the sum of $200. On the 4th day of April, 1876, Wright caused a transcript of the judgment thus obtained to be filed in the office of the clerk of the Gibson Circuit Court. Endorsements on this transcript showed that an execution had been issued on the judgment on the 24th day of March, 1871, and had been returned on the 18th day of September in that year, and that another execution had been issued on said 18th day of September and returned on the 6th day of January, 1872, with Wright's receipt thereon for $50. Attached to the transcript was a certificate in the following words :

" I do hereby certify the above to be a correct statement of the proceedings had before me in the above entitled case. Given under my hand and seal this 3d day of April, 1876.

*" Z. M.* WEED, *Justice.* [SEAL] "

On the 19th day of December, 1882, William C. McIntire, the father of John McIntire, being at the time the owner of certain tracts of land in Gibson county, died intestate. One undivided fifth part of these lands descended to John McIntire as one of the surviving children of the decedent, upon whose estate letters of administration were issued to George W. Davis, one of the appellees.

On the 9th day of July, 1883, a certificate, executed by Weed, the justice, stating that, on the 16th day of January,

1883, an execution had been issued on the above named judgment and delivered to the proper constable, who had made a return that no goods or chattels could be found to satisfy the judgment, was filed in the proper clerk's office of the county. Wright, on the same day, filed with the clerk his affidavit, alleging that the judgment remained unsatisfied, and that there was then due thereon, as a balance of principal and interest, the sum of $269.95, and for costs the sum of $4.05. The clerk thereupon issued an execution upon the judgment, which was directed and delivered to the sheriff of Gibson county. The sheriff levied the execution on the undivided fifth part of the lands which had descended to John McIntire from his father, and advertised and, on the 25th day of August, 1883, sold such undivided fifth part at sheriff's sale, Wright becoming the purchaser and in due time receiving a sheriff's deed for the same. In the meantime Davis, as administrator of the estate of William C. McIntire, filed his petition in the Gibson Circuit Court, praying that the lands which had descended to John McIntire and the other children and heirs at law of the decedent might be sold to pay the debts and expenses outstanding against the estate, and making the said John McIntire and the other children and heirs at law defendants to such petition. That court accordingly ordered the lands in question to be sold to pay such debts and expenses. In pursuance of such order, Davis, on the 14th day of March, 1884, sold, and afterwards conveyed, such lands to a person other than Wright.

On the 29th day of January, 1886, Davis filed in the office of the clerk of the court below his account for the final settlement of William C. McIntire's estate. The clerk, by his endorsement thereon, set the account down for hearing on the 20th day of February, 1886.

This account showed a balance of $901.99 in Davis' hands for distribution, which was the remaining part, and consisted of the proceeds of the lands sold by Davis, as hereinabove

stated, and that of that amount John McIntire was entitled to receive the sum of $180.89.

On the 26th day of February, 1886, the account not having yet been heard or acted upon, the appellant, Henry A. Yeager, filed his intervening petition setting forth that, on the 30th day of March, 1885, he had purchased of John McIntire all his interest in the estate of the decedent, William C. McIntire, and had received an assignment and transfer of such interest in writing, which he exhibited with his petition, and praying that the amount shown to belong to the said John McIntire should be ordered to be paid to him. On the same day the appellee Wright also filed an intervening petition setting up the facts which led to his purchase, as well as the fact of his purchase, of the interest of John McIntire in the lands which had descended to him from his father, and the sale of the interest so purchased by him with the interests of the other heirs by Davis to pay the debts and charges against the estate of William C. McIntire, and praying that he might be subrogated to the right of the said John McIntire to a distributive share in the proceeds of the lands so sold by Davis and in his hands for distribution, as shown by the account for final settlement.

After hearing the evidence submitted by the parties, and an examination of the matters embraced in the account for final settlement, the circuit court approved and confirmed the account and ordered that Wright be subrogated to the interest of John McIntire in the money in Davis' hands for distribution, and that he, the said Wright, was entitled to receive the distributive share so due in right of the said John McIntire.

Yeager, who had first proved an assignment and transfer to him of John McIntire's interest in the estate as alleged, reserved exceptions upon the introduction in evidence of the transcript of the judgment, of the execution issued by the clerk of the circuit court, the sheriff's return to that execution and the sheriff's deed to Wright; also, upon the suffi-

ciency of the evidence to sustain the order subrogating Wright to the interest of John McIntire in the surplus in Davis' hands for distribution.

Substituting the circuit court for the court of common pleas, as the act abolishing the latter court did, the civil code of 1852, which was in force when the transcript in evidence in this case was filed in the clerk's office, provided that "It shall be the duty of every justice of the peace in this State, when requested by the plaintiff or his agent, to make out and certify a true and complete transcript of the proceedings and judgment in any cause, upon any docket, legally in his possession. The plaintiff may file such transcript in the office of the clerk of any circuit court in this State." Also, that "It shall be the duty of the clerk forthwith to record the transcript in the order-book, and docket the judgment in the judgment docket. The judgment set forth in the transcript shall be a lien upon the real property of the defendant within the county, to the same extent as judgments of the circuit court from the time of filing the transcript." 2 R. S. 1876, 236, sections 539 and 540.

The objections urged to the introduction of the transcript in evidence were:

*First.* That it was not certified as the law required.

*Second.* That the issuance of execution had been so long delayed that the judgment had become dormant, and that by the lapse of more than ten years the judgment had ceased to be a lien on real estate, and, therefore, to have the force and effect, in any respect, of a judgment rendered in the circuit court.

As applicable to the first objection, section 459, R. S. 1881, which has been in force ever since the civil code of 1852 went into effect, declares that "Copies of the proceedings and judgments of any justice of the peace of this State, certified under his hand and seal, or under the hand and seal of the justice who may have the legal custody thereof, as true and complete copies of such proceedings or judgments,

shall be received as evidence in the several courts in this State."

The statement that a transcript contains "a correct statement" of certain proceedings is the practical equivalent of a certificate that the transcript is "a true and complete copy" of such proceedings, and this is especially the case where, as in this case, the transcript purports to, and apparently does, contain a complete copy of appropriate proceedings within the jurisdiction of a justice of the peace.

The judgment rendered in this case was copied into and constituted a part of the proceedings set out in the transcript. The certificate of the justice, therefore, that the transcript gave " a correct statement of the proceedings had before" him in the cause, was, as we believe, also a sufficient verification of the completeness of the transcript as to the judgment.

The word " proceeding," in a judicial sense, is much more comprehensive than that of "judgment," the former very frequently including the latter. We consequently regard the certificate to the transcript in evidence in this case as having been, in connection with the context, substantially sufficient. This conclusion is, we think, fairly sustained by the case of *Fisher* v. *Hamilton,* 49 Ind. 341.

In response to the second objection, it may be said that the validity of a judgment for the purpose of having execution upon it is not impaired because, by the expiration of ten years, it has ceased to be a lien upon real estate. This was practically, as well as correctly, settled by the case of *Martin* v. *Prather,* 82 Ind. 535.

The doctrine that an execution issued on a dormant judgment, without a revival or leave of court, is not void, but only voidable as against direct proceedings to have it set aside or annulled, was also reaffirmed in that case. On that subject see, also, the cases of *Mavity* v. *Eastridge,* 67 Ind. 211, and *Richey* v. *Merritt,* 108 Ind. 347.

It follows that the transcript was properly admitted in ev-

idence, notwithstanding the second objection to its admissibility.

It was insisted, as objections to the introduction in evidence of the execution, and of the sheriff's return made to it,

*First.* That it had been issued upon a dormant judgment, without a revivor or leave of court.

*Second.* That the judgment on which it purported to have been issued had never been a lien on the real estate levied on by it.

*Third.* That the levy of the execution, under the circumstances, created no lien on the real estate in question.

*Fourth.* Substantially the same as the third.

*Fifth.* That the interest of John McIntire in the lands levied on was not, at the time of the levy, subject to sale on execution.

*Sixth.* That the levy and sale exhibited by the sheriff's return did not confer on Wright any just claim to John McIntire's interest in the surplus in Davis' hands for distribution.

What we have already said answers the first four objections thus stated, as well as certain objections made to the admissibility of the certificate of the justice that no goods or chattels could be found to satisfy the judgment, and of the affidavit of Wright to obtain the issuance of the execution in evidence.

No argument is submitted in support of the fifth and sixth objections to the reading of the execution in evidence, and, consequently, no question is presented here upon them.

There was no formal evidence introduced at the trial showing that the transcript from the justice's docket had been either recorded on the order-book of the circuit court or entered on the judgment docket of that court, and for that reason it is claimed that the finding of the circuit court in favor of Wright was not sustained by sufficient evidence. But the execution which was read in evidence, as has been shown, contained a recital that the transcript of the judg-

.ment upŏn which it had been issued had not only been filed in the clerk's office, but had also been recorded in the proper order-book and entered on the appropriate judgment docket, and, in the absence of any objection to the admissibility of the execution on account of the omission of formal proof of the matters thus recited, we construe this recital by the exe·cution as tending to supply the omission of more formal proof of the existence of the facts so recited. *Stockwell* v. *State, ex rel.*, 101 Ind. 1; *Riehl* v. *Evansville, etc., Ass'n*, 104 Ind. 70. If Yeager had objected to the reading of the execution in evidence because no proof had been made of the recording of the transcript and of the docketing of the judgment, and his objection had been overruled, a very different question would have been presented. But as the question which would have been thus presented is, as applicable to this case, a merely hypothetical one, we intimate no opinion upon it at the present hearing. 2 Works Pr., section 1037; *Berry* v. *Reed*, 73 Ind. 235; *Bell* v. *Davis*, 75 Ind. 314; *State, ex rel.*, v. *Record*, 80 Ind. 348; *American Ins. Co.* v. *Gibson*, 104 Ind. 336.

The judgment is affirmed, at the appellant's costs.

