235 Ind. 34 (1955)
129 N.E.2d 553
HINDS, EXECUTOR OF ESTATE OF SICKELS, DECEASED
v.
McNAIR ET AL.
No. 29,346.
Supreme Court of Indiana.
Filed October 26, 1955.
Rehearing denied January 10, 1956.
*39 Clair McTurnan, Alembert W. Brayton, of Indianapolis, Draper & Eichhorn, of Gary, Emmet M. Larue, of Rensselaer, Telford B. Orbison, of New Albany (on rehearing), for appellants.
Albert H. Gavit, of Gary, for appellees.
ARTERBURN, J.
This cause is before this court on a petition to transfer from the Appellate Court. It is an appeal arising from a judgment adverse to the appellants-plaintiffs in proceedings supplemental to execution pursuant to Acts 1881 (Spec. Sess.), ch. 38, § 562, p. 240; 1937, ch. 84, § 1, p. 440, being § 2-4401, Burns' 1946 Replacement. The object of the proceedings was to determine if appellee, McNair (judgment debtor), owned certain property and subject any such property to the payment of the judgment. The original creditors and holders of the judgment upon which these proceedings are based have died. The appellant, Hinds, in his dual capacity as Executor and Trustee, was properly substituted for the interest represented by the original and now deceased judgment holders. The original judgment was in the amount of $61,330.27 and rendered on the 27th day of September, 1943. The complaint in the statutory proceedings supplemental to execution was in four paragraphs alleging in substance, (1) that appellee, McNair, owned 1496 shares of common stock and 1500 shares of preferred stock of his co-appellee, Gary Real Estate Exchange, Inc.; (2) that appellee, McNair, owned a farm and an apartment building, title of which he carried in the corporation's name; (3) that the Gary Real Estate Exchange, Inc., is McNair's alter ego; (4) that McNair in reality owns the shares of stock above mentioned but falsely claims that he holds it as Trustee. The statute, pertaining to proceedings supplemental to *40 execution, permits no defensive pleadings and none were filed. The cause was tried by jury on appellant's request and over appellees' objections. Upon this point we render no opinion since the appeal is by the party who requested the jury. From a verdict and judgment in favor of appellee, McNair, the appellants have appealed. The first question raised is by the appellees, who claim that the question involved in this litigation has become moot because the lien of the judgment upon which the proceedings supplemental were based became ten years old on September 27, 1953, and expired. However, it was in effect when the proceedings herein were begun. It is true that a lien of a judgment expires in ten years and the lien of execution expires on its return date, but we are not concerned here with the liens of judgments and executions. Proceedings supplemental are brought solely for the purpose of subjecting property allegedly belonging to a judgment debtor to the satisfaction of the judgment debt, not to a lien. An outstanding execution is a condition precedent to the filing of a proceeding supplemental under the statute, but we find no valid reason for holding that the action dies unless it is fully and finally disposed of before the return date of the execution or the expiration of the judgment lien. Yeager v. Wright et al. (1887), 112 Ind. 230, 13 N.E. 707.
Such a rule would put it in the power of any defendant to defeat the basic purpose of proceedings supplemental by delaying tactics. We hold, therefore, that the expiration of the judgment lien or the lien of the execution pending the proceedings supplemental does not terminate such proceedings and make them ineffectual.
We come now to a major point raised on this appeal. The error assigned is the overruling of the motion for *41 a new trial, the first specification being that the verdict of the jury is not sustained by sufficient evidence. We have repeatedly held that such assignment of error presents no question for review where the verdict is negative. Capes v. Barger (1953), 123 Ind. App. 212, 109 N.E.2d 725; McKee v. Mutual Life Ins. Co. of New York (1943), 222 Ind. 10, 51 N.E.2d 474. However, a negative verdict may be attacked under the second specification, namely, the verdict of the jury is contrary to law. Wilson, Admx. v. Rollings (1938), 214 Ind. 155, 14 N.E.2d 905.
If the undisputed evidence entitles the one who has the burden of proof to a verdict which has been denied him, such verdict is contrary to law. To determine this question we may consider only the evidence most favorable to the appellees, together with all reasonable inferences which may be drawn therefrom.
"It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law."
Pokraka v. Lummus Co. (1952), 230 Ind. 523, 532, 104 N.E.2d 669.
We shall consider the evidence with reference to the real estate first.
Under paragraphs 2 and 3 of appellants' complaint they had the burden of proving that the real estate, the legal title of which was in the Gary Real Estate Exchange, Inc., was actually the property of appellee, McNair, and that the corporation was the alter ego of McNair. The evidence discloses that the real estate was purchased from a stranger by the *42 corporation and was never in the name of McNair; that the consideration for the real estate was paid by the corporation and not by McNair; and that McNair, at no time prior to its purchase, was ever connected directly or indirectly with the real estate or had any interest therein.
The evidence further shows that most of the assets of the Gary Real Estate Exchange, Inc., when it was organized were acquired from another corporation in which McNair had only a 1% interest and his wife a 99% interest. The distinct corporate entity of this latter corporation is not questioned. The evidence further shows that at the time the property settlement was made between McNair and his wife in 1948, the Gary Real Estate Exchange, Inc., owed him $95,000 and this indebtedness was used in making the property settlement. All of this evidence is without conflict. If the evidence on these items were in conflict, however, still this court would have no authority to set aside a negative verdict against the appellants who had the burden of proof. There is other evidence besides that above recited concerning the ownership of the real estate and the alter ego of the corporation, which we need not recite here. The above evidence makes the verdict of the jury on those issues not contrary to law.
We next take up the more complicated problem as to the ownership of the corporate stock which is the subject of the first and fourth paragraphs of complaint. Originally, the appellee, McNair, and his wife, Esther, owned all of the stock in a corporation known as the Xen McNair, Inc., which was engaged in an insurance and loan business. McNair had one share and his wife 99 shares. These shares were given to her by her husband. Thereafter, the Gary *43 Real Estate Exchange, Inc., was organized. In consideration of Xen McNair, Inc., transferring all its assets to the new corporation, the new corporation agreed to issue all of its shares of stock (1500 shares of common stock and 1500 shares of preferred stock) to such persons as designated by Xen McNair, Inc., the old corporation. Accordingly, after some discussion with his wife, Esther, in 1931, appellee and his wife decided to use this stock as a trust res for their children. All of the preferred stock (1500 shares) was put in the name of Marie Reed, a sister of the wife, Esther McNair, and 1496 shares of the common stock was likewise placed in Marie Reed's name. The other four shares of the common stock were used to qualify directors. One of such shares was transferred to Esther McNair, the wife, and one to Xen McNair. All of these stock certificates were delivered to appellee, McNair. Thereafter, Marie Reed made a blank assignment of each certificate. However, the stock book of the corporation still showed Marie Reed as the owner of record. Sometime between 1934 and 1936 the appellee, McNair, was injured in an automobile accident and he placed the name of his wife in the blank assignment of the common stock certificate but for some reason the preferred stock certificate still remained open and later McNair, for some unexplained reason, wrote "cancelled" on the assignment of the preferred stock. Appellee, McNair, in the testimony states that sometime about 1931 he and his wife discussed the matter of using all of the stock in the Gary Real Estate Exchange, Inc., as a trust for their two small children. That in line with this discussion he took out additional life insurance policies. He states their understanding was as follows:

*44 "That I should act as trustee for both children during my life time, and I should manage the affairs of the Gary Real Estate Exchange during my life time, that I should do things that I thought in my judgment were to the betterment, that is to the financial betterment of the Gary Real Estate Exchange. I was to draw a salary from the Gary Real Estate Exchange in keeping with my own conscience. I was to vote the stock  in other words it was a pretty broad agreement. I would have liberty to do with the Gary Real Estate Exchange as I thought best so long as it was my judgment (Tr., p. 334, ll. 1-30) to the betterment ultimately of the Gary Real Estate Exchange. If I died prior to Mrs. McNair, she was to step in my shoes then and run the corporation and do in her conscience what was the best interest of the Gary Real Estate Exchange financially, and draw a salary, and at her death then this stock was to be accurately divided by our two children. Should she die prior to my death, then in that event when I died that ended the trust, the children would then get this stock. When the last one of us died, the stock was to be transferred directly to the children. We talked about dividends and decided if there were any, they would accrue from my, or her, management, so that by the same token if there were any dividends that accrued after both children were of age and we saw fit to give them to the children we could, if we didn't see fit to do it we could use our own discretion and judgment to reinvest the dividends which would still be under trust for the children."
This agreement was entirely oral. There apparently were no other witnesses to the matter other than the husband, Xen McNair, and wife, Esther. This is the alleged trust which the appellants refer to in their fourth paragraph of complaint.
In 1948 McNair and his wife, Esther, were divorced and a property settlement made between them in which McNair and his wife stated that a bona fide and subsisting dispute existed as to the ownership between *45 them of the 1496 shares of stock of Gary Real Estate Exchange, Inc., and in that settlement Esther McNair released to her husband any claim she had or might have to any shares of the corporation's stock.
In considering what took place in 1931 we should realize that the stock (and the consideration for it) came from a corporation in which the wife had a 99% interest and appellee 1%. Appellants contend this action includes an issue of a fraudulent transfer by McNair to defeat the creditors (appellants' predecessors in interest) at the time. The allegations of the complaint do not raise such issue with reference to fraud. It says merely "said stock is and long has been the property of said Xen McNair, whose ownership thereof is concealed...." No allegation of any transfer of property then owned by McNair is made. The issue made is simply that McNair is the actual owner legally and beneficially of the stock which he is concealing.
If there were any question about the issue of fraud in 1931 existing, certainly, the six year statutes of limitation takes it out of the case. Acts 1881 (Spec. Sess.), ch. 38, § 37, p. 240, being § 2-601, Burns' 1946 Replacement. Appellants say the statute does not begin to run "until discovery of the fraud." This is hardly a correct statement of the law. The statute runs unless there is an active and intentional concealment of the fraud. The burden is on the appellants to show such active concealment in the period following 1931. Mere lack of knowledge by a creditor of the private business transactions of the debtor is not enough to stop the running of the statutes. Wood v. Carpenter (1879), 101 U.S. 135, 25 L.Ed. 807; Terry v. Davenport (1916), 185 Ind. 561, 112 N.E. 998; Jackson v. Jackson (1897), 149 Ind. 238, 47 N.E. 963.
*46 There being no issue here of original fraudulent transfer in 1931, the appellants were limited to proving and had the burden of proving, that the appellee, McNair, was the actual owner legally and beneficially of certain assets, before the court could subject them to the satisfaction of the judgment. In other words, the appellants have the burden of proving the ownership of the stock was individually (and not as trustee, agent, or some other capacity) in the appellee. There was no burden upon McNair to prove who the actual owner was. The ownership could be left in doubt from the evidence presented at the trial and still the appellants, who had the burden, would not be entitled to recover.
The appellants in their fourth paragraph of complaint allege that a purported trust by McNair was being used to conceal his true ownership of the stock. The pleading by a plaintiff of an anticipated defense of the defendant does not shift the burden of proof. This is true whether or not the defendant chooses to accept such tendered defensive allegations. If the appellants saw fit to allege a trust was being used as a screen for actual ownership, this did not change the burden on the part of the appellants to prove the actual and individual ownership of the stock in McNair.
If a trust were proved by the evidence the appellants would still have to prove that the trust was a screen and wrongfully manipulated for the purpose of concealing assets owned by McNair. If no trust were proved, the appellants would still have the burden of proving appellee was the actual owner legally and beneficially. As stated previously, where the error claimed on appeal is that the verdict is contrary to law, it is only where the evidence is without conflict, and but one *47 conclusion can be reached, that the verdict will be set aside.
Therefore, looking only at the evidence most favorable to the appellee, McNair, and considering all reasonable inferences and conclusions therefrom, as we are compelled to do, in testing the jury's verdict in this case, we find that appellee, McNair, and his wife, on September 17, 1931, and from time to time thereafter, together made statements orally that they were setting aside the stock in the corporation known as Gary Real Estate Exchange, Inc., in trust for their two small children. McNair and his wife never at any time drew any dividends on this stock. He did manage the corporation's business and drew a salary from the corporation for his services. He took possession of the stock at the time issued with an open assignment. The trust declarations were made contemporaneously. The consideration for this stock came from a corporation in which the wife, Esther, held 99% of the stock. At sometime prior thereto (the evidence does not show) he had made a gift of this interest to her. There is no attack upon this gift or its validity. She was the owner of this interest so far as we are concerned here.
The appellants contend that the property settlement in anticipation of divorce showed that McNair and his wife considered themselves owners of the stock. It is true such a conclusion might have been drawn therefrom by a jury. However, the jury's verdict was to the contrary. Reasonable inferences may be drawn consistent with this verdict from the recitals in the settlement agreement and from the following additional facts: The wife, Esther McNair, at the time held one share of stock registered in her own name; also, Esther McNair's name had been placed in the blank endorsement *48 on certificate for 1496 shares as assignee. She had furnished the consideration for the issue of all the stock by reasons of owning 99% of the stock in the corporation which turned over its assets to Gary Real Estate Exchange, Inc. For these reasons and others the jury may assume that it was the desire of the parties to eliminate any apparent conflicting interest between the husband and wife and place beyond question as between them, that appellee, McNair, held all the legal title in the stock for the purpose of the trust. This action was consistent with the legal title in McNair as the trustee, particularly in view of the jury's verdict negativing the existence of any fraud as alleged.
It is urged that where the written testimony standing alone is undisputed as to ownership of the stock, oral testimony must yield to such writings. This, likewise, is not strictly the law, since under the parol evidence rule, oral testimony may explain or show a consistency in the documentary legal title being in one person and the beneficial title in some other party. 9 Wigmore, Evidence, § 2431 (3rd ed.).
In Fardy v. Mayerstein (1943), 221 Ind. 339, 47 N.E.2d 315, we have a case very similar to the one before us here. In that case Fardy had the physical possession of a stock certificate that was assigned in blank to which he, as plaintiff, claimed to have both the legal and beneficial title. The defendant claimed that Fardy held the possession only as a fiduciary and that a purported sale of the stock to him was invalid. The decision of the court was negative (against Fardy) and for the defendant, the court holding that Fardy was not the owner of the stock. On appeal Fardy claimed error on the ground that the decision of the court was contrary to law. In Fardy's case and in the case before us now, the ownership of a stock certificate *49 assigned in blank and in the possession of a party, was denied, explained, qualified, or opposed, by oral testimony at the trial, which tended to show that the party possessing such a certificate held it only in a fiduciary capacity. McNair's possession of the stock certificate endorsed in blank is explained by oral testimony which is not inconsistent with his possession as trustee. This court has no more right to ignore this oral testimony than it had in the Fardy case. The Supreme Court also held under the Uniform Stock Transfer Act that mere possession of a stock certicate endorsed in blank does not in itself determine ownership. Fardy v. Mayerstein, supra.
If we assume a still stronger case than exists here for the appellants, namely, that the stock certificates and stock records bore the actual name of appellee, McNair, still oral testimony would be competent to show that he or any other person in like situations held such certificates as trustee, pledgee, agent, or as a wrongful holder (without a proper delivery). Were the law not otherwise, banks, brokers or persons to whom stock and other securities are pledged, given for safekeeping, delivered on oral trust for certain purposes, or persons who wrongfully takes them, would conclusively be presumed the owner on the theory presented by the appellants that written evidence supersedes and overrides any conflicting or explanatory parol evidence. Upon mature reasoning such a rule could not be the law. Rowe v. Johnson (1945), 223 Ind. 289, 60 N.E.2d 529; Fowler et al. v. Hobbs et al. (1882), 86 Ind. 131; Haughton v. Aetna Life Ins. Co. (1905), 165 Ind. 32, 73 N.E. 592, 74 N.E. 613; Zorich v. Zorich (1949), 119 Ind. App. 547, 88 N.E.2d 694.
Bogert, in the discussion of the parol evidence rule, takes up this very question and states:

*50 "When efforts are made to fasten a trust on the interest of an absolute transferee in a bill of sale or assignment of personal property, the question whether the parole evidence rule prevents such a result is everywhere important. The Statute of Frauds has no effect in such a case, since trusts of personal property may, as far as that act is concerned, be proved by oral evidence. Where the transferee is alleged to be a trustee for a third person, not the transferor, the cases allow oral evidence of the trust, as they do in the real property cases. Where the alleged trust is for the transferor, the personal property decisions seem to show a greater liberality in allowing oral evidence than do the real property cases, and generally allow oral evidence that the transferee was to take in trust for the transferor. `The bill of sale does not declare or negative a trust; hence parol testimony is admissible to show the real purpose of the transfer, and does not vary or contradict the writing.' No reason is seen why the cases regarding land should be more stringent in the application of the parol evidence rule to trusts than are the personal property decisions."
1 Bogert, Trusts and Trustees, § 51, pp. 372, 373.
Pursuing this matter a little further we call attention to the fact that it is well settled that a creditor who has not extended credit, relying upon the apparent record ownership of property by a debtor, and who has not been deceived thereby, has no right to seize such apparently owned assets if they belong to a third party. That is the situation of the appellants here so far as we can see from the record. The same principle holds true as to judgment creditors. They are not B.F.P.'s. The same rule applies in the law of trusts.
"A creditor of the trustee personally who attaches trust property or obtains and records a judgment against him or levies execution upon the trust *51 property is not a bona fide purchaser although he has no notice of the trust."
2 Restatement, Trusts, § 308;
1 Bogert, Trusts, § 69;
For Indiana cases see: Wallace's Indiana Ann. to Restatement of law of Trusts, Pocket Supp. § 308.
This principle runs true even where there has been an oral trust of real estate which is not enforceable because it violates the Statute of Frauds and is not in writing, if the trustee desires to carry out the trust agreement nevertheless. It is a principle of law that if the trustee sees fit voluntarily to carry out such an oral trust of real estate, he may do so and the courts will protect a trust res against the claims of the creditors of the trustee who held an absolute conveyance.
In Hayes et al. v. Reger (1885), 102 Ind. 524, 1 N.E. 386, one Reger and his wife conveyed a lot by absolute deed for no consideration to Stumph. While the title was in Stumph, the plaintiffs obtained a judgment against him. Thereafter, Stumph re-conveyed the lot to Reger's wife in accordance with their previous oral understanding. The court said on page 527:
"The interest which the lien of a judgment affects is the actual interest which the debtor has in property, and a court of equity will always permit the real owner to show, there being no intervening fraud, that the apparent ownership of another is or was not real, and when the judgment debtor has no other interest, except the naked legal title, the lien of a judgment does not attach."
It is a well recognized rule of law that scarcely needs any citations to support it, that an express trust in personal property may be orally made. Neither is there any requirement as to the number of witnesses that are necessary to prove such trust. *52 There is no prohibition against the declaration of a trust being made jointly or to a wife, husband or any other person, of legal capacity.
The jury here could well have believed the husband and wife jointly declared or agreed upon a trust of property in which both hold interests, and that McNair should hold the legal title as trustee for their children.
When the creator of a trust is the owner or part owner, no delivery or transfer of the intended trust res is necessary as to his interest to consummate or make effective the trust. A simple statement orally made by such owner as to the personal property is sufficient.
"If the owner of property declares himself trustee of the property, a trust may be created without a transfer of title to the property."
1 Restatement, Trusts, § 17, comment a (1935);
1 Scott, Trusts, § 17.1.
The case of Hatton, Ex'r. v. Jones (1881), 78 Ind. 466 relied upon by the appellants is an anomaly in Indiana law. It has never been cited in any other opinion so far as we can find. It simply is not the law by the great weight and overwhelming numerical authority. Any statements in that case contrary to the principles announced above are overruled.
See Comment: Wallace's Indiana Ann. to Restatement of law of Trusts, Pocket Supp., § 17 (1953).
The Restatement of the Law of Trusts also says:
"(1) Except as otherwise provided by statute, the manifestation of intention to create a trust may be made by written or spoken words or by conduct.
"(2) No particular form of words or conduct is necessary for the manifestation of intention to create a trust."

*53 1 Restatement, Trusts, § 24.
"It is possible to create a trust without using the words `trust' or `trustee'."
1 Scott, Trusts, § 24.
"Except as otherwise provided by statute, an enforceable trust can be created without a writing."
1 Restatement, Trusts, § 39, p. 124.
The Statutes of Fraud in Indiana requires that:
"No trust concerning lands, except such as may arise by implication of law, shall be created unless in writing, signed by the party creating the same, or by his attorney thereto lawfully authorized in writing."
1 R.S. 1852, ch. 113, § 1, p. 501, being § 56-601, Burns' 1951 Replacement.
"A trust in personal property may be created by parole. No particular words are necessary; each case depends on its own facts upon which intention of the parties is to be determined." (Cases cited.)
Wallace's Indiana Ann. to the Restatement of the Law on Trusts, Pocket Supp., § 24 (1953);
1 Scott, Trusts, § 39;
1 Bogert, Trusts, § 65.
Looking at the evidence most favorable to the appellee, McNair, in view of the verdict in his favor, there are here all the elements necessary to create a trust, with the legal title in McNair and the beneficial interest in the children of McNair and wife. The appellants alleged and raised the issue of fraudulent concealment of assets of McNair by a fictitious trust in this case. The jury found in the negative and against appellants on all issues including that of fraudulent concealment, even if we assume he originally owned the stock which became the trust res. Therefore, the attack on the alleged trust fails and it stands unimpeached. Since this was a trust for the children of appellee, McNair, and not for the settlors, 1 R.S. 1852, *54 ch. 42, § 17, p. 299, being § 33-408, Burns' 1949 Replacement is not applicable.
Assuming appellants made out a prima facie case, it is overcome as soon as opposing evidence is produced to explain or rebut it to the satisfaction of the triers of the facts. This is true even though the opposing evidence is oral, so long as it is properly admissible for consideration of the jury.
It is not for this court because it sees danger of fraud, to legislate in this matter and say that a trust must be proved by a certain number of witnesses or that if the personal property involved exceeds the values of $500 a trust should be expressed in writing. The Legislature, where it feels that unusual opportunities for fraud exist has enacted statutes requiring a writing. Personal property trusts have never been included in such legislation in this state, however desirable we may think it would be to have such transactions in writing. Richards v. Wilson (1916), 185 Ind. 335, 112 N.E. 780.
An appellate tribunal cannot decide which witnesses should be believed and which were not worthy of belief nor weigh the evidence. These are functions solely of the jury and the trial court. That is the place where the test as to whether the evidence is sufficiently "clear and convincing" to support the verdict must be met. In the trial court it must appear that substantial justice has been done by the verdict or a new trial should be granted by the trial judge. On a motion for a new trial, the trial court has an opportunity to weigh the evidence. The court on appeal does not. The trial court presides over the case, sees the witnesses' looks and manners, hears their statements, and is in a far more favorable position to arrive at a correct factual decision and determines the probative *55 force of the evidence than in an appellate court which has merely the cold type of the printed record and briefs before it. The members of the court on appeal have no right to project their personal beliefs or feelings as to the weight of the evidence or credibility of the witnesses into the case and override the jury. Bell v. State (1954), 233 Ind. 629, 122 N.E.2d 466; Haxton et al. v. McClaren (1892), 132 Ind. 235, 31 N.E. 48.
The only method yet devised by man to assure that justice is administered in the greatest number of cases, is for the courts to follow time tested principles and rules of the law and not shy away from them when confronted with what might seem "hard cases" to some.
No doubt, a good case can be made out for the appellants by considering all the evidence most favorable to their side of the case. However, in this case, we, as a court of appeals, are confronted with a jury verdict in favor of the appellee, McNair. Looking at the evidence most favorable to the appellee and drawing all reasonable inferences therefrom, as we are obligated to do, we have no right to disturb the trial court's ruling on the motion for a new trial or disturb the jury's verdict.
We now take up the remaining specifications of error by the appellants.
In Specifications 28 and 29, appellants complain "that the verdict is contrary to the answers to Interrogatories Nos. 1 and 2 finding no trusteeship." Actually the answers were: "not sufficient evidence." It is well settled that this is not a proper specification in a motion for a new trial. Answers to interrogatories propounded to a jury may not be considered in determining the sufficiency of the evidence to support the general verdict. If the appellants had decided to raise the question that the answers were in irreconcilable *56 conflict with the general verdict, it should have been done by a motion for judgment on the answers. The appellants not having seen fit to do this, cannot raise the same question by indirection under a specification in the motion for new trial. Therefore, the answers to the interrogatories may not be considered on this appeal. North-Western Mutual Fire Insurance Company v. Blankenship et al. (1883), 94 Ind. 535, 48 Am. Rep. 185; Cleveland, etc., R. Co. v. Miller (1905), 165 Ind. 381, 14 N.E. 509; Masterson v. Southern R. Co. (1907), 170 Ind. 296, 84 N.E. 505; Sullivan & O'Brien, Inc. v. Kennedy (1939), 107 Ind. App. 457, 25 N.E.2d 267. Additionally we may say all these interrogatories appear improper since they call for conclusions of law. However, this is harmless error, since in such case, the answers must be disregarded.
In Specifications 3 and 4, appellants objected to the giving of Interrogatories Nos. 3 and 4 which ask if the Gary Real Estate Exchange, Inc., was the owner of the real estate described in the complaint. The answer in each case was yes. The answers were not in conflict with a verdict of the jury. If the interrogatories were improper in form because they called for conclusions of law or ultimate facts on an issue, the court should give them no consideration and they would have no effect on the verdict. Improper interrogatories, not the basis for a judgment, notwithstanding verdict and standing alone, are not available error. 3 Lowe's Revision of Works Indiana Practice, § 56.15; Roller et al. v. Kling et al. (1898), 150 Ind. 159, 49 N.E. 948; C. & E.I. Ry. Co. v. Gilbert (1935), 100 Ind. App. 365, 194 N.E. 186.
We find no available error with reference to the interrogatories.
*57 Under Specifications 5, 6 and 7 the appellants objected to the giving of the court's Instructions 2, 4 and 5 respectively.
Court's Instruction 2 is substantially the same as appellants' tendered Instruction 1. Appellants cannot complain that the court gave as his own instruction what appellants asked.
The appellants object to the court's Instruction 4 because it states that creditors subsequent to the creation of the trust cannot complain. This properly states the law and in view of some uncertainty as to the exact time of the creation of trust we do not believe there was any prejudicial error committed by the giving of this instruction.
The court's Instruction 5 told the jury in substance that the appellants could not recover if there was no trust unless the jury found that McNair alone owned the stock. This instruction was applicable to the evidence in issue and we fail to find any erroneous statement of the law therein.
Specifications 8, 9, 10, 11, 13, 14, 15, 16, 17, 18 and 19 concern claimed errors in the giving of appellees' instructions.
We have examined appellees' Instruction 7 which states:
"No particular form is required for a trust with respect to corporate shares of stock. It may be oral or written."
We find nothing wrong in this statement. It appears to us to be a correct statement of the law. Zorich v. Zorich, supra; 1 Restatement, Trusts, § 24, supra.
We have examined appellees' Instructions 8 and 9, and they appear correctly to state the law. Moreover, *58 the appellants' objections to each of them are not clear or specific.
We have examined both of appellees' Instructions Nos. 11 and 14. The objections to Instruction 14 were too indefinite and not sufficiently specific to raise any point for our consideration. The objection to appellees' Instruction No. 11 suggests that instruction should read in the alternative rather than in the conjunctive. Upon reading of this instruction it will be noted that it is stated in both the conjunctive and alternative.
Appellees' Instructions 16, 17, 18 and 19 upon consideration were proper instructions. They told the jury that if they were unable to determine who owned the property involved from the evidence their verdict should be for the defendants.
Specifications 18 to 27, both inclusive, concern the refusal of the court in giving tendered instructions of the appellants.
Appellants' refused Instruction 1 is quite long and involved. A portion of this instruction was given by the court in its Instruction 1. The refused instruction stated that ownership or control of a corporation and used to defraud creditors was sufficient proof of alter ego. Suffice to say, it takes both ownership and control. Feucht v. Real Silk Hosiery Mills, Inc. (1938), 105 Ind. App. 405, 12 N.E.2d 1019.
Tendered Instructions 2, 5 and 6 concerned transfers in fraud of creditors. An examination of the complaint showed no allegations of a fraudulent transfer. In fact, the complaint states that "said stock had long been the property of Xen McNair", and makes no allegation with reference to any "transfer or conveyance" by him. The tendered instructions were not applicable to the issues.
*59 Instructions 7 and 8 were improper statements of the law in light of Fardy v. Mayerstein, supra.
There was no error committed in refusing to give tendered Instruction 9 since it was covered by plaintiff's Instruction No. 10.
Appellants' refused Instruction 11 concerns transfers to hinder and delay creditors and for that reason was not applicable to the issues as alleged.
Appellants' refused Instruction 12 was not applicable to the evidence and does not correctly state the law. It is too broad in that it requires "an agreement" for a trust even if the appellee alone should later become the owner of the property subsequent to the original declaration.
Appellants' refused Instruction 14 was fully covered by Instruction 3. We find no reversible error in the giving or refusal to give any of the instructions under the specifications of the appellants herein.
Specifications 37 to 52, both inclusive, concern alleged errors in rulings on the evidence. All these specifications are waived by the appellants except Specifications 37, 38 and 39 which concern the refusal of the court to permit the appellants to introduce in evidence the divorce complaint of Esther McNair who is not a party to the action. The appellants cite no cases in support of their contention. It appears to us that this complaint without question is hearsay and the allegations and statements therein are not those of any party to this cause of action. It seems very obvious to us the exhibits were not admissible in evidence.
We have examined all the specifications of error presented by the appellants and find no error.
The judgment of the lower court is affirmed.
Emmert, C.J. and Achor, J. concur.
*60 Bobbitt, J. dissents with opinion in which Landis, J. concurs.

DISSENTING OPINION
BOBBITT, J.
I am fully aware that appellants have the burden of proving that the ownership of the stock in question was in Xen McNair, individually, and not as trustee. However, the question here, as I see it, is: "Did the evidence entitle appellants to relief which was denied them?"
Appellee was, at the beginning of the chain of events involved herein, the president of a corporation in which 98% of the stock was held by his wife as a gift from him.
A new corporation was subsequently formed at which time appellee proposed that the assets of the old corporation (in which his wife owned 99% of the stock) be transferred to the new corporation, consideration for which the new corporation was to issue 1500 shares of preferred and 1500 shares of common stock. This was done and on September 18, 1931, the new corporation, at the direction of appellee, Xen McNair, issued all of the 1500 shares of the common stock, except individual shares held by directors, to one Marie Reed who was McNair's secretary and his sister-in-law. McNair testified that this was done at the time "because it was decided between Mrs. McNair and I at the time that we would put it in Marie Reed's name until such time as we decided how we were going to place it in trust."
The certificate for 1496 shares of the common stock of the new company which was issued to Marie Reed was immediately endorsed by her in blank and delivered into the possession of Xen McNair. Sometime later which, according to the evidence, might have been in *61 1934, 1935, or 1938, at the direction of McNair, Mrs. McNair's name was filled in as assignee on this stock certificate.
On the same date on which the common stock was issued, preferred stock was also issued to Marie Reed but the certificate was retained by McNair. Later, in 1932, Marie Reed, at McNair's direction, executed assignments in blank covering all the preferred stock that had been issued in her name and delivered the same to McNair. Subsequently McNair, without any explanation for his doing so, wrote "Cancelled" across the face of the preferred stock certificate.
Appellee, McNair, managed the corporation, transacted its business, made its tax returns, and until 1945 or 1946 drew a salary of $250 per month, and since that time a salary of $10,000 per year. He could increase his salary as he wished. McNair lives on a farm owned by the corporation, rent free, drives an automobile owned by the corporation, and he keeps silverware owned by the corporation for his own use.
In 1948, McNair was divorced by his wife. In the divorce proceedings a property settlement was executed by both parties stating that "the principal assets claimed by wife and husband are held by corporation." This agreement further stated that, "WHEREAS, with respect to one thousand four hundred and ninety-six (1496) shares of the capital stock of corporation there is a bona fide and subsisting dispute and controversy between wife and husband as to the ownership between them of such stock; ...." (My emphasis.) As a part of the property settlement in the divorce proceedings Mrs. McNair signed a release to McNair of any claim she had or might or could assert to any "shares of corporation's stock."
*62 Under the law as it now exists in Indiana the delivery of the stock certificate, endorsed in blank, to Xen McNair was sufficient to transfer title to him. Acts 1923, ch. 24, § 1, p. 71, being § 25-701, Burns' 1948 Replacement; First Merch. Nat. Bk. v. Murdock Realty Co. (1942), 111 Ind. App. 226, 39 N.E.2d 507; Crowder v. Terhorst (1939), 107 Ind. App. 288, 21 N.E.2d 141; Conrad v. Olds (1942), 110 Ind. App. 208, 37 N.E.2d 297.
In the divorce settlement Mrs. McNair released any right which she might have had in said stock to her husband, Xen McNair. Since he, at that time, had possession of the certificate for the 1496 shares of stock, the release to him by Mrs. McNair of any rights which she might have in the stock transferred absolute legal title to McNair, individually. Section 25-701, supra.
From the foregoing it appears to me that the evidence established a prima facie case of ownership of the stock in McNair, individually.
Since appellee, McNair, asserts that this stock was held by him in trust, the burden was upon him to establish the trust and to go forward with evidence to overcome the prima facie case which plaintiff had established. Young v. Miller (1896), 145 Ind. 652, 656, 44 N.E. 757.
To discharge this burden appellee testified that he and Mrs. McNair had orally agreed to establish a trust in favor of their children with the shares of such stock as the res of the trust.
Concerning the establishment of this trust, McNair testified as follows:
"Q. I hand you plaintiff's exhibit 21, [preferred certificate] was that issued at the same time.
"A. Yes.

*63 "Q. Was that handled in the same way [as the common certificate]?
"A. No sir.
"Q. What happened that you didn't handle them alike?
"A. Well, 21 years ago I can't tell you why.
"Q. Weren't you going to treat them alike?
"A. We had agreed that these two certificates of stock would be in trust for our children, whether I forgot to have her [Marie Reed] sign this I couldn't say, I wouldn't say yes or no, maybe I forgot it, maybe I didn't, may-me I did it deliberately."
Later Xen McNair testified:
"Q. Is this trust you are talking about in writing?
"A. No, it isn't. It was a verbal trust between Mrs. McNair and myself.
"Q. When was it made?
"A. It was consummated on the 18th of September, 1931.
"Q. There isn't a bit of doubt in your mind about that date?
"A. No, although it was talked of etc. prior, but there is no doubt about consummation.
"Q. Well it was talked about a great deal over a period of time?
"A. I think in March, 1930 it was talked over."
And still later, in response to questions concerning the ownership of the stock, Xen McNair said:
"A. I do say that. I never owned it.
...
...
"Q. What date do you fix for your trust agreement now?
"A. I fix September 18, 1931 as the trust agreement but February 13, 1932 as a solidifying of that what was intended."
*64 McNair further testified that no tax returns had ever been filed for the alleged trust and that it had never received any income to report.
There is no evidence that during the more than 20 years which he retained possession of the stock certificate for 1496 shares of the common stock of the corporation, he made any effort to have it transferred to himself as trustee on the books of the corporation. Neither did he fill in his name as trustee on the stock certificate during the time he held it with a blank endorsement, but, on the contrary, he did some 15 or 20 years ago assign such stock to his wife by filling in her name as assignee.
The question which this court must decide is whether or not, as a matter of law, a trust was established as asserted by appellee, McNair. If a trust was established it must rest on the testimony of appellee, Xen McNair, and the circumstances surrounding the alleged trust.
It is well established that a trust in personalty may be created by parol declarations. However, the establishment of such trust by parol testimony has been restricted by this court. In Baker v. Leathers (1853), 3 Ind. 558, 563, it is said:
"`* * * such evidence [parol] is most unsatisfactory, on account of the facility with which it may be fabricated, the impossibility of contradiction, and the consequences which the slightest mistake or failure of memory may produce. Yet if plain, consistent, and, especially, if corroborated by circumstances, it is competent ground for a decree.' 2 J.C.R. 405  1 Wendell, 626."
In Richards v. Wilson (1916), 185 Ind. 335, 368, 112 N.E. 780, it is said:

*65 "... express trusts in personalty ... may, ... be created, declared, or admitted verbally when the evidence is clear and unequivocal."
The general rule is stated in Scott on Trusts, Vol 1, § 52, p. 285, as follows:
"Where a trust of personalty is orally declared, it is often said that the trust must be proved by clear and convincing evidence."
Appellee McNair is asserting the trust in this case, and it was incumbent upon him to prove its establishment by clear and satisfactory evidence, having in mind all the surrounding facts and circumstances.
Appellee's testimony may be considered in establishing the alleged trust, but such testimony must be supported either by other competent, direct or circumstantial evidence, or by circumstances surrounding the alleged trust from which proper inferences may be drawn and which are such as to lead inescapably to the establishment of an oral trust as asserted by appellee.
Appellee's testimony is not supported by any other direct or circumstantial evidence, or by any reasonable inferences, but, on the contrary, his detailed recital of facts, and all inferences which may be drawn from circumstances surrounding the ownership of such stock since its issuance, lead inescapably to the conclusion that Xen McNair, individually, was at the time this action was instituted, the the sole owner of the stock here in question.
If this be true then plaintiffs-appellants were denied relief to which they were entitled by the evidence and the verdict is contrary to law.
While it is true that the result reached by the jury might indicate that they believed McNair held such *66 stock as trustee, it is of interest to note the answer to one of the interrogatories submitted by the defendant.
1. "Q. Is Xen McNair as Trustee for his children, Sonia and Xen McNair, Jr., the owner of certificate number 45 for 1496 shares of common stock of Gary Real Estate Exchange, Incorporated?
"A. Not sufficient evidence." (My emphasis.)
McNair either held the stock as trustee or owned it individually. There is nothing in the evidence to indicate otherwise. If the jury thought the evidence was insufficient to establish ownership as trustee, then the only other conclusion which could be drawn is that he held it individually.
Sufficient evidence has been defined as, "Such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded;" Black's Law Dict., 3d Ed., p. 702; and as "Such evidence as in amount is adequate to justify the court or jury in adopting the conclusion in support of which it was adduced." 32 C.J.S., Evidence, § 1016, p. 1043.
Can it be successfully asserted that the unsupported testimony of the defendant given under the circumstances in this case, 21 years after the date on which he claims to have created an oral trust, is adequate or of such character as would justify the conclusion that an oral trust for his children was established by him in September of 1931. I think not.
While this court will not weigh evidence, it will not say that a mere trace or trifle is sufficient to sustain an issuable fact. Rhoades v. State (1946), 224 Ind. 569, 575, 70 N.E.2d 27.
As stated by the Appellate Court in its opinion (122 N.E.2d 875), McNair's general statement that he never owned the stock is completely disproved by the *67 detailed facts, some of which are recited in his testimony, and cannot be considered as creating a dispute in the evidence. Rhoades v. State, supra.
In my opinion appellee failed to produce even a "trace" of evidence of probative value to sustain his burden of proving the establishment of the alleged trust, and this part of the judgment should be reversed.
The Appellate Court reached a correct result and the petition to transfer should be denied.
By holding that an oral trust may be established by the sole unsupported testimony of the settlor, given more than 21 years after the date on which the trust was allegedly formed, the majority opinion has opened wide the door to the unscrupulous for the perpetration of unlimited frauds.
I would deny the petition to transfer.
Landis, J. concurs.
NOTE.  Reported in 129 N.E.2d 553.