**FRANKLIN ELECTRIC COMPANY, INC., Appellant/Respondent,**

v.

**UNEMPLOYMENT INSURANCE APPEALS OF the DEPARTMENT OF WORKFORCE DEVELOPMENT, Appellee/Petitioner.**

**No. 93A02–0911–EX–1121.**

Court of Appeals of Indiana.

June 25, 2010.

Rehearing Denied Sept. 9, 2010.

---

Heather L. Wilson, Amy S. Wilson, Maggie L. Smith, Frost Brown Todd LLC, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Lauren Bogan, Indiana Department of Workforce Development, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant Franklin Electric Company appeals from the determination, by a liability administrative law judge ("LALJ") from the Indiana Department of Workforce Development ("the Department"), that its two subsidiary corporations, Franklin Electric Sales ("FES") and Franklin Electric Manufacturing ("FEM") are not new successor employers under the Indiana Unemployment Compensation Act ("the Act"). Franklin Electric raises three issues, which we restate as whether the LALJ incorrectly concluded that Franklin Electric, FEM, and FES were only one employer for purposes of the Act. We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 15, 2003, FEM and FES were formed; at the time, Franklin Electric was in the business of manufacturing and selling electric motors. In December of 2003, FEM and FES each filed a "Re-

port to Determine Status" in which the corporations requested new unemployment insurance tax accounts. On January 4, 2004, Franklin Electric executed two contribution agreements assigning assets to FEM and FES. Franklin Electric organized FEM to "manufacture Products for Franklin Electric" and FES to "distribute and sell Products for Franklin Electric." Appellee's App. pp. 116, 120. Franklin Electric's manufacturing and sales units were transferred to FEM and FES, respectively, in exchange for 100% stock ownership in both corporations. All employees engaged in manufacture and sales in Franklin Electric would become employees of FEM and FES, respectively. On December 11, 2006, Franklin Electric entered into an "Asset Purchase Agreement" with Bluffton Motor Works, LLC, in which assets of Franklin Electric and FEM were transferred.

At first, the Department gave FEM and FES new employer accounts under the Act, allowing them to be taxed at a rate of 2.7% instead of the rate of 4.9% that Franklin Electric paid in 2004. The lower rate resulted in a savings of approximately $64,000 for 2004. In June of 2008, the Department notified Franklin Electric that it had launched an investigation into whether wages had been reported under the correct unemployment tax account number. A Department detection system had revealed that Franklin Electric's wage records fell from 705 in the fourth quarter of 2003 to 224 in the first quarter of 2004; FEM's grew from zero to 483; and FES's grew from zero to four. The detection system also revealed that approximately 300 wage records had been transferred from FEM to Bluffton Motor Works in the fourth quarter of 2006.

When it was formed, FEM manufactured the same electric motors and water pumps that had been manufactured by Franklin Electric previously, and FES sold those same electric motors and water pumps. Currently, with one minor exception, all of FEM's products are sold through FES, and FES does not sell any products that are not made by FEM. All revenues generated by the sale of electric motors and water pumps are controlled by Franklin Electric, and the banking for all three corporations is done centrally through Franklin Electric. Franklin Electric pays unemployment tax and contributes to the workers training fund on behalf of employees of all three corporations. Franklin Electric makes a single payment to a payroll company to pay the wages for all three corporations, although the three maintain separate payrolls and issue W–2s that bear the name of the individual corporation.

During the Department's investigation, it was provided with the organizational charts of all three corporations. Franklin Electric's chart shows Scott Trumbull as Chief Executive Officer and Chairman, Robert Stone as Senior Vice President, and Dan Crose as Vice President. The highest-ranking Officer listed on FEM's organizational chart is Crose, as Vice President, and, on FES's chart, Stone, as Senior Vice President. According to documents filed with the Indiana Secretary of State, Trumbull is President and Michael Butchko is Treasurer of all three corporations, while T.J. Stupp is Vice President of FEM and FES.

Franklin Electric's website serves all three corporations. The website lists the company maintaining it only as "Franklin Electric" and does not mention FEM or FES. Job openings at FES have been listed on the Franklin Electric website, and at least one FES employee has been listed as a Franklin Electric employee. Franklin Electric has registered thirty-six

web domains, while FEM and FES have registered none.

On November 26, 2008, the Department issued a determination that Franklin Electric did not dispose of a distinct and segregable portion of its organization to FEM or FES. Consequently, the Department cancelled FEM's and FES's accounts under the Act and transferred their experience accounts and wage records back to Franklin Electric. Franklin Electric filed a protest to the determination, and, on June 25, 2009, the LALJ held a hearing. On October 20, 2009, the LALJ concluded that "[t]he transfers from [Franklin Electric] to FEM and FES did not constitute partial successorships under the Act, and therefore, no new employers were created as a result of said transfers." Appellee's App. p. 186. The LALJ found, however, that Franklin Electric's failure to pay its proper contribution was not due to any intent to defraud the Department or negligent or intentional disregard of authorized rules, regulations, or notices, and so waived any interest or penalty.

## DISCUSSION AND DECISION

### *Standard of Review*

■ Indiana Code Section 22–4–32–9(a) (2009) provides that "[a]ny decision of the liability administrative law judge shall be conclusive and binding as to all questions of fact." When the LALJ's decision is challenged as contrary to law, we are limited to a two-part inquiry into the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of fact. *Bloomington Area Arts Council v. Dep't of Workforce Dev., Unemployment Ins. Appeals*, 821 N.E.2d 843, 849 (Ind.Ct.App.2005). Basic facts are reviewed for substantial evidence, conclusions of law for their correctness, and ultimate facts to determine whether the LALJ's finding is a reasonable one.

*Id.* Ultimate facts are conclusions or inferences from the basic facts. *Id.*

### *Indiana's Unemployment Insurance System*

■ Under Indiana Code Article 22–4 (2009), unemployment insurance benefits are funded by a tax contribution imposed upon Indiana employers. *Indpls. Concrete, Inc. v. Unemployment Ins. Appeals of the Ind. Dep't. of Workforce Dev.*, 900 N.E.2d 48, 50 (Ind.Ct.App.2009). A new employer's contribution rate will be 2.7%. Ind.Code § 22–4–11–2(b)(2) (2009). Each year, the Department determines the contribution rate applicable to each employer, and the contribution is then credited to an "experience account" established for each employer by the Department. Ind.Code § 22–4–11–2(a), –2(e). An employer's experience account is charged when a qualifying employee receives unemployment benefits based upon unemployment with that employer. *Ashlin Transp. Serv., Inc. v. Ind. Unemployment Ins. Bd.*, 637 N.E.2d 162, 171 (Ind.Ct.App.1994). The experience account contribution rate for an employer is determined, in part, by the balance in its experience account, meaning that when a company's employees file more unemployment claims, its contribution rate will also increase. *Id.* In the event of a sale of a company, the Department is responsible for determining the successorship status of an acquiring employer when either a total or partial acquisition occurs between employers. *Indpls. Concrete, Inc.*, 900 N.E.2d at 50.

Indiana Code section 22–4–10–6(b) (2009), provides that an employer becomes a successor employer via a partial acquisition when it

acquires a distinct and segregable portion of the organization, trade, or business within this state of another employer [and that in such cases] the successor

employer shall assume the position of the predecessor employer with respect to the portion of the resources and liabilities of the predecessor's experience account as pertains to the distinct and segregable portion of the predecessor's organization, trade, or business acquired by the successor.

The only question at issue here is whether FEM and FES acquired "distinct and segregable" portions of Franklin Electric. More fundamentally, the question is whether FEM and FES are truly separate entities from Franklin Electric for purposes of the Act, as there seems to be little doubt that what they acquired would qualify as distinct and segregable portions of Franklin Electric. If FEM and FES are truly distinct entities, they qualify as new successor employers and would be entitled to pay the lower, 2.7% contribution rate. If not, Franklin Electric is the only one of the three corporations that qualifies as an employer under the Act.

█ The Department contends that FEM and FES are not truly separate companies from Franklin Electric, asking us to disregard their corporate forms for purposes of the Act.

Indiana courts are reluctant to disregard a corporate entity, but will do so to prevent fraud or unfairness to third parties. *Magic Packing Co. v. Stone–Ordean* (1902) 158 Ind. 538, 541, 64 N.E. 11,

12; *Gurnik v. Lee* (1992) Ind.App., 587 N.E.2d 706, 710. The burden is on the party seeking to pierce the corporate veil, *Hinds v. McNair* (1955) 235 Ind. 34, 41, 129 N.E.2d 553, 559, to establish "that the corporation was so ignored, controlled or manipulated that it was merely the instrumentality of another, and that the misuse of the corporate form would constitute a fraud or promote injustice." *Gurnik*, 587 N.E.2d at 710.

When a court exercises its equitable power to pierce a corporate veil, it engages in a highly fact-sensitive inquiry. *Hinds*, 235 Ind. at 41–48, 129 N.E.2d at 559–561.

*Winkler v. V.G Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind.1994).

The Seventh Circuit Court of Appeals has identified several factors that may touch on this question in cases such as this[1] and has held that the presence of these factors in the proper combination justifies piercing the corporate veil:

(a) The parent corporation owns all or most of the capital stock of the subsidiary.

(b) The parent and subsidiary corporations have common directors or officers.

(c) The parent corporation finances the subsidiary.

---

1. We are aware that the Indiana Supreme Court has stated, in the piercing-the-corporate-veil context, that

> an Indiana court considers whether the plaintiff has presented evidence showing: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) oth-

er shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

*Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). In our view, this was not intended to be an exclusive list, and most of these factors would be much more relevant in a case of fraud by shareholders or directors where one is seeking to have those persons held personally liable. We see no indication in the record that any shareholder or director of Franklin Electric has tried to intentionally defraud anyone.

(d) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(e) The subsidiary has grossly inadequate capital.

(f) The parent corporation pays the salaries and other expenses or losses of the subsidiary.

(g) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(h) In the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own.

(i) The parent corporation uses the property of the subsidiary as its own.

(j) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

(k) The formal legal requirements of the subsidiary are not observed.

*C M Corp. v. Oberer Dev. Co.*, 631 F.2d 536, 538 –539 (7th Cir.1980) (some punctuation omitted).

Of the factors listed above that are relevant here, we conclude that all support piercing the corporate veils of FEM and FES. Franklin Electric owns 100% of the stock of both FEM and FES. Neither FEM and FES has a board of directors, with Franklin Electric board members and employees serving as the ranking officers of each subsidiary. According to documents filed with the State, all three corporations have the same President and Treasurer and FEM and FES have the same Vice President. *See Stacey–Rand, Inc., v. J.J. Holman, Inc.*, 527 N.E.2d 726, 728–29 (Ind.Ct.App.1988) (concluding that the relationship between directors and managers of two corporations is relevant to determine if corporate form is to be disregarded).

As far as finances go, Franklin Electric controls the only bank accounts used by the three corporations. All of FEM's and FES's revenue is controlled by Franklin Electric, which also pays all of the wages for all three corporations. FEM and FES appear to have business dealings almost exclusively with Franklin Electric and each other. FEM and FES were specifically founded to manufacture and sell products for Franklin Electric. Moreover, with one minor exception, all of the FEM's products are sold through FES, and FES does not sell any products that are not made by FEM. At the time they were formed, FEM and FES were composed entirely of assets transferred from Franklin Electric, and staffed exclusively by former employees of Franklin Electric.

Franklin Electric appears to treat the property of FEM, at least, as its own. On December 11, 2006, a transfer of Franklin Electric and FEM assets to Bluffton Motor Works was accomplished, including the transfer of approximately 300 FEM employees. Franklin Electric, however, was listed as the sole transferee on the purchase agreement, even though some of the assets transferred belonged to FEM. The press release regarding the transfer indicated that Franklin Electric was selling its Engineered Motor Products Division and made no mention of FEM.

Additional factors also point to the conclusion that FEM and FES are not truly autonomous entities. All three corporations operate out of the same building, which Franklin Electric identifies as its corporate headquarters. Finally, Franklin Electric holds itself out to the public as one company, not three. On its website,

Franklin Electric does not make any distinction between itself and FEM and FES, failing even to mention the other two corporations. Also on the website, Franklin Electric describes itself as "a global electric motor manufacturer[,]" even though all such manufacturing is actually done by FEM. Appellee's App. p. 130. In the press release regarding the Bluffton Motor Works sale, Franklin Electric described itself as a "global leader in the production and marketing of water and fuel pumping systems[,]" even though those functions are now performed by FEM and FES, respectively. Appellee's App. p. 177. Job openings at FES have been listed on the website, and at least one FES employee has been listed as a Franklin Electric employee. Franklin Electric has registered thirty-six web domains, while FEM and FES have registered none. *See, e.g., Clarke Auto Co. v. Fyffe,* 124 Ind.App. 222, 227, 116 N.E.2d 532, 535 (1954) ("Where a party permits another to use his firm name, he is liable to others who do business with that person who do not know the true facts.").

In summary, we conclude that the LALJ correctly disregarded the corporate forms of FEM and FES for purposes of the Act. Allowing FEM and FES to qualify as independent new employers would work an injustice to the taxpayers and citizens of the State of Indiana.[2]

We affirm the determination of the LALJ.

RILEY, J., and MATHIAS, J., concur.

---

**2.** Were we to accept Franklin Electric's argument, any Indiana corporation could avoid ever having to pay a contribution rate of greater than the new employer rate by periodically creating a new corporation and selling itself to it.