**William C. LAMBERT and Agricultural Aerial Applicators, Inc., Defendants–Appellants,**

**v.**

**The FARMERS BANK, FRANKFORT, INDIANA, Plaintiff–Appellee.**

No. 29A02–8705–CV–00214.

Court of Appeals of Indiana, First District.

March 1, 1988.

Phillip L. Stewart, Carmel, for defendants-appellants.

James D. Moore, Kathryn J. Cook, Ryan, Hartzell, Ryan & Moore, Frankfort, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Debtor appeals judgment that a certain corporation was his alter ego and that corporate assets were subject to execution in satisfaction of debtor's personal liabilities. We affirm.

## FACTS

On October 14, 1983, William Lambert, individually and as president of Agricultural Aerial Applicators, Inc. (AAA), entered into an agreement to borrow money from Farmers Bank of Frankfort, Indiana (Bank). Under the terms of the promissory note the Bank loaned to Lambert the sum of $20,000, to be repaid on January 12, 1984, with an interest rate of 13.5%. As security for the loan, Lambert listed collateral securing other loans to the Bank and Lambert's deposit accounts.

Lambert defaulted on the loan, and on November 8, 1984, the Bank filed a complaint seeking $20,000 plus interest and attorney's fees as provided in the note. An agreed judgment was entered on February 8, 1985, which awarded the Bank a total of $25,118.89. The Bank filed its initial motion for proceedings supplemental on March 1, 1985. Hearings were conducted to establish the extent of Lambert's assets, income, and property which could be reached to satisfy the judgment. The Bank filed a second motion for proceedings supplemental on April 11, 1986, and a writ of execution was issued. The sheriff returned the execution unsatisfied when an investigation revealed that "Lambert's" vehicles and other property were not titled in his own name.

On October 16, 1986, the Bank filed a motion for determination of ownership of assets wherein it alleged that Lambert used several corporate entities for the purpose of defrauding creditors. The trial court found that Lambert exercised extensive control over a corporation entitled Lambert Enterprises, Inc., conducted that corporation's business without regard to the corporate form, failed to distinguish between personal and corporate assets, and

attempted to place his assets beyond the reach of creditors by titling the assets in the corporate name. Furthermore, the court determined that the Bank had relied on Lambert's representations that he owned and controlled Lambert Enterprises in extending credit to Lambert. The court concluded that Lambert Enterprises, Inc. was the alter ego of William Lambert and that the corporate assets were in fact personal assets subject to execution in satisfaction of William Lambert's personal debts. Lambert appeals that decision.

### ISSUES

Did the trial court err in finding Lambert Enterprises, Inc. to be the alter ego of its president and in allowing creditors of the president to reach corporate assets?

### DISCUSSION AND DECISION

Before we discuss the merits of Lambert's appeal, we address the Bank's contention that the appellant failed to comply with certain Indiana Rules of Procedure. Specifically, the Bank claims Lambert's Motion to Correct Errors was defective in that it lacked the specificity required under Indiana Rules of Procedure, Trial Rule 59(A)(4), (8), (D). Failure to comply with the requirements of T.R. 59 may result in waiver of the claimed error on appeal, however, we prefer to decide cases on the merits rather than on technicalities. *Antrup v. State* (1978), 175 Ind.App. 636, 639, 373 N.E.2d 194, 196, *trans. denied.* An alleged error will be deemed waived only where the appellant's non-compliance with the rules is so substantial that it impedes our consideration of the issues. *Id.* Although Lambert's motion lacked specificity, we are able to glean from his brief and from the record the gist of his arguments.

■ In addition, the Bank claims Lambert's brief was defective under Indiana Rules of Procedure, Appellate Rule 8.3(A)(4), (7). Lambert failed to include a verbatim statement of the trial court's judgment, and he failed to set forth specifically in his brief the errors assigned in the motion to correct errors and intended to be raised on appeal. While it is preferable to have alleged trial court errors quoted verbatim in the corresponding argument section of the appellant's brief, failure to do so will not necessarily preclude our review. *In re Marriage of Moser* (1984), Ind.App., 469 N.E.2d 762, 765. An accumulation of procedural violations may require us to dismiss an appeal, however, the errors in this case do not thwart our review; therefore, we proceed to discuss the merits of the appellant's claims.

The appellant, William Lambert, claims that Lambert Enterprises is a distinct corporate entity which should not be liable for the debts of Lambert or any other corporation. The Bank, however, claims it relied on Lambert's representations that he owned all the stock in Lambert Enterprises when the Bank agreed to loan money to Lambert and AAA. It is clear that we may not reweigh the evidence presented at trial or evaluate the credibility of witnesses. *Extra Energy Coal Co. v. Diamond Energy and Resources, Inc.* (1984), Ind.App., 467 N.E.2d 439, 441. Where conflicting evidence is presented at trial, it is the task of the trier of fact to resolve the conflicts. *Id.* If evidence of probative value was presented which supports the trial court's findings of fact and conclusions of law, the judgment will not be disturbed. *Id.*

■ The trial court found that Lambert Enterprises was the alter ego of William Lambert and that the corporate entity should be disregarded. We agree. As a general rule, Indiana courts are reluctant to disregard corporate identity and do so only to protect third parties from fraud or injustice when transacting business with a corporate entity. *Id.*, at 441–42. Likewise, the separate existence of a corporation may be disregarded to prevent injustice when a third party transacts business with an individual who fraudulently uses a corporation as a shield from liability. In order to disregard the corporation's separate existence under the alter ego theory, the third party must show both ownership and control of the corporation by the shareholder. *Hinds v. McNair* (1955), 235 Ind. 34, 58, 129 N.E. 2d 553, 566.

In the case at bar, the Bank had dealt with William Lambert for several years before the note in question was executed. In 1977, Lambert submitted an individual financial statement wherein he included both personal and corporate assets and stated that he owned all the stock in the corporation (Lambert Enterprises). In addition, his list of assets included a helicopter, mobile home, trailer, Cessna Aircraft, two (2) automobiles, and miscellaneous office equipment and tools. The Bank's vice-president testified that at the time of the loan in question, he believed that Lambert owned all of the corporate stock. Lambert testified, however, that ninety percent (90%) of the corporate stock had been owned by his children for the past fifteen (15) years, and that he had transferred his remaining ten percent (10%) of the stock to an "adopted son" in 1982. Thus, according to Lambert, at the time of the loan in 1983, he had no ownership interest in Lambert Enterprises.

The confusion over stock ownership was compounded by corporate documents purporting to be waivers of notice of shareholders' meetings. The record contains a separate document for each year between 1957 and 1986, and each bears the signature of William Lambert below the following statement: "We the undersigned, being all the shareholders of ... Lambert Enterprises ... waive notice of shareholders meeting...." Record at 329–510. Each time, Lambert signed as president, but on the 1983 document the words "Proxy Holder of all Shares" were handwritten below Lambert's signature. Record at 347. The minutes of each of these "shareholder's meetings" stated "All the shareholders were present to-wit: Wm. C. Lambert." Record at 444. Taken at face value, the documents support the conclusion that Lambert was the sole stockholder of Lambert Enterprises, at least until 1986.

In addition to stock ownership, the record reveals other evidence that Lambert owned the corporation and that he treated corporate assets as his own. An insurance policy dated March 1980, insures property which Lambert now claims is owned by Lambert Enterprises. The policy, however, shows William C. Lambert as the insured. Also, a real estate appraisal of the property dated April 1979, listed William Lambert as the owner. An investigation by the sheriff's department revealed that William Lambert owned no property in his own name, but Lambert testified that some of the property in his possession was kept for personal use. He stated that he had lived in the corporation's mobile home during the 1960's, and in 1980, he lived on the second floor of one of the corporation's buildings. Lambert stated also that a boat which was stored at his residence belongs to Lambert Enterprises. He explained that the boat had been purchased for his children and that no business purpose was associated with it.

Finally, Lambert first claimed that although he was in control of the corporation, he received no salary or compensation. But later, he stated that he believed the last time he had received compensation from Lambert Enterprises for his services was in 1979. According to Lambert, the corporation receives a monthly payment of approximately $2400.00 from the sale of corporate real estate. He explained that the corporation uses the income to pay off debts and that the corporation is "growing" despite the fact that it currently conducts no active business. A corporate balance sheet dated December 31, 1985, reveals a $2500.00 loan from the corporation to Lambert. Lambert testified that he used that money to start AAA corporation, but that he believed most of the amount had "already been paid". Record at 324.

Despite Lambert's verbal attempts to distance himself from the corporation, the record contains ample evidence that Lambert, as corporate president, is merely the alter ego of Lambert Enterprises. The evidence tended to show that Lambert owned all the corporate stock, treated corporate assets as his own, used the corporation to procure goods and services for himself, and that he generally governed all the corporate affairs. There was no error in the trial court's decision to disregard the corporate entity of Lambert Enterprises and subject its assets to execution in satisfac-

tion of William Lambert's personal debts, including the judgment in favor of the Farmers Bank.

Affirmed.

NEAL and CONOVER, JJ., concur.