William J. BRANT, Jr., Appellant–Judgment Debtor; Brant Construction Management, Inc., Accurate Investments, LLC, et al., Appellants–Petitioners,

v.

Robert R. KRILICH, Appellee–Judgment Creditor, Mercantile National Bank of Indiana, Appellee–Garnishee–Defendant.

No. 45A03–0411–CV–514.

Court of Appeals of Indiana.

Oct. 14, 2005.

Patrick B. McEuen, Millbranth & Bush, Valparaiso, for Appellants.

Terrill D. Albright, Brian S. Fennerty, Jerome P. McCluskey, Baker & Daniels, Indianapolis, Amicus Curiae Attorneys.

Renee J. Mortimer, Scott B. Cockrum, Robert Kinsella, Hinshaw & Culbertson LLP, Schererville, for Appellees.

## OPINION

SULLIVAN, Judge.

Appellant William J. Brant, Jr. appeals from the trial court's decision that Appellee Robert Krilich is entitled to a pro rata portion of certain bank accounts with which Brant is affiliated and to Brant's ownership interest in several limited liability companies ("LLCs").[1] He presents numerous issues for our review, which we restate as two dispositive issues: (1) whether the various Garnishee Businesses[2] should have received notice of the garnishment proceeding involving the checking accounts in their respective names, and (2) whether the Business Entities[3] should have received notice of Krilich's intent to seek Brant's ownership in-

---

1. This appeal was originally filed as two separate appeals. The first addressed the propriety of garnishment of the bank accounts and the second addressed the transfer of the ownership interests of limited liability companies. We sua sponte consolidated the appeals, and upon the request of Krilich for the second filed appeal, ordered oral argument upon the consolidated appeal.

2. These various businesses and trusts include Brant Construction Management, Inc.; Accurate Investments, LLC; Brant Trust; Brant Construction, LLC; Cambridge Commons Joint Venture; Cambridge Commons Owners Association, Inc.; Cline Commons, LLC; K & B Management, LLC; Plum Creek Village Associates; VA Venture Baton Rouge, LLC; William J. Brant, Jr. Trust 1720; Broadfield Park; and Oak Crest, Inc. Although these businesses were not named as formal garnishee defendants, for purpose of this issue, we will refer to these business entities collectively as "the Garnishee Businesses." Of this group, the trial court found that Brant did not possess a share of the accounts of Broadfield Park and Oak Crest, Inc. Therefore, the trial court did not order the garnishment of the funds from the accounts of those two entities. However, because their status could change in a future garnishment proceeding, they are included in the list of Garnishee Businesses. We also note that the trial court ordered garnishment from an account with the name

of William J. Brant, Jr. and Edna F. Brant. Brant does not contest the ability of Krilich to garnish the proceeds in that account apparently because it is the personal account for him and his wife. Our decision in no way addresses Krilich's right to the funds in that account or any claim that Edna F. Brant may assert.

3. The Business Entities include the businesses in which Brant has some ownership interest which Krilich has attempted to garnish or attach in proceedings supplemental. Specifically it includes Accurate Investments, LLC; Brant Trust; Plum Creek Village Associates; William J. Brant, Jr. Trust Number 1720; Edwill, LLC; William J. Brant, Jr. Associates; Brant Rental; Brant Construction, LLC; Briar Crossing, LLC; Cambridge Commons Joint Venture; Cline Commons, LLC; K & B Management, LLC; Brant Construction Management, Inc.; VA Venture Baton Rouge, LLC; VA Venture Grand Rapids, LLC; VA Venture Pueblo, LLC; Cambridge Commons Owners Association, Inc.; Tech Business Center Property Owners Association, LLC; VA Venture Evansville, LLC; VA Venture San Jose, LLC; Autumn Creek, LLC; Lake Hills Development, LLC; Williams Pond, LLC; and Hunter's Run Homeowners Association at St. John, Inc.

terests in them. We reverse and remand for further proceedings not inconsistent with this decision. Because of the confusion which has existed throughout the original prosecution of this action, we also offer some direction and guidance to the trial court in resolving other issues which will necessarily arise upon remand.

The underlying facts which led to Krilich's action to seek garnishment of funds from the Garnishee Businesses' checking accounts and the acquisition of Brant's ownership interests were explained by this court in *Krilich v. Soltesz/Brant Development Co.*, 771 N.E.2d 1169, 1170–71 (Ind. Ct.App.2002), *trans. denied*, as follows:

> "On December 31, 1986, Krilich and Brant, who was a partner of the Soltesz/Brant Development Company, entered into a Tenancy in Common Agreement with respect to a shopping center in Tampa, Florida. In part, the agreement provided that Krilich agreed to purchase an 80% interest in the shopping center in return for a guarantee from Brant that the shopping center would 'produce a cash flow to Krilich equal to 9–1/2% of the amount invested by Krilich.' Appellant's App. p. 66. When the shopping center failed, Krilich filed a complaint against Brant in Hillsborough Circuit Court in Florida. On November 1, 1989, the Florida court entered a final judgment in favor of Krilich in the amount of $2,310,367.51 plus interest. A certified copy of the judgment was recorded in Hillsborough County on June 22, 1990 and it bore the name and address of Brant's attorney.[4] The judgment was re-recorded in 1996 with the Hillsborough Circuit Court Clerk with an affidavit from Krilich['s] attorney,

which contained Brant's last known address.

On June 17, 1996, Krilich filed a complaint on foreign judgment in Lake Circuit Court to domesticate the Florida judgment. Brant filed an answer to the complaint, but the parties later stipulated to dismissal of the complaint, without prejudice. On December 16, 1996, Krilich filed a motion for reinstatement following voluntary dismissal. The case was reinstated, by agreement, on March 26, 1997. Brant then filed an answer and motion for change of judge. Therefore, on May 19, 1998, Lake Superior Court Judge James Richards assumed jurisdiction.

On July 6, 1999, Krilich filed a motion for summary judgment. Brant filed a response and cross-motion for summary judgment arguing that the Florida court did not have jurisdiction over him, or in the alternative, that Krilich failed to properly record a lien on his Florida judgment, and therefore, no judgment lien should be recognized in Indiana. Appellant's App. pp. 45, 50. On June 4, 2001, the trial court granted Krilich's motion for summary judgment, in part, and granted Brant's motion in part, issuing the following order:

> The Court, being duly advised, now finds as follows and enters these conclusions of law.

> 1. Krilich is the owner of a valid Florida judgment entered on November 1, 1989, following appropriate service of process upon Brant in accordance with both Florida and Indiana long-arm statutes, and Brant's challenges to the jurisdiction of the Flori-

---

**4.** The language "and it bore the name and address of Brant's attorney" was subsequently stricken from the opinion upon rehearing at 775 N.E.2d 1235, 1236 (Ind.Ct.App.2002) because the record was unclear as to whose attorney's name was on the certified judgment.

da Court over his person should be denied.

2. The Court, finds Brant's Cross–Motion for Summary Judgment and argument for denial of the attachment of Plaintiff's lien upon Brant's real estate in Indiana to be compelling and that there shall not be a lien on any real property owned by Brant in Indiana.

The Court therefore orders as follows:

1. Krilich's Motion for Summary Judgment [is] GRANTED to domesticate his judgment against Brant, individually, to the extent of Brant's personalty subject to attachment and garnishment to satisfy the judgment.

2. Brant's Cross–Motion for Summary Judgment is GRANTED to deny Plaintiff a lien against Defendant's real estate in Indiana to satisfy Plaintiff's judgment."

This court determined that the judgment was properly domesticated and that the trial court erred in concluding that Krilich could not maintain a lien against Brant's real property in Indiana. *Id.* at 1173.

Krilich subsequently sought garnishment of bank accounts which were "to the credit, either individually or jointly, of . . . William J. Brant, Jr." Plaintiff's Exhibit 2. In so doing, on April 30, 2004, he served interrogatories upon Mercantile National Bank of Indiana ("Mercantile") seeking information on Brant's aforementioned accounts. On May 3, 2004, Mercantile placed a hold upon all funds in fifteen accounts with which Brant was affiliated and noted that those accounts were all "Business Checking" and the address listed for each was the same. Plaintiff's Ex.

2. Relying upon this information, Krilich argued to the trial court at a hearing held on May 20, 2004 that Mercantile's answer to the interrogatories was evidence that the "accounts [were] under the name of William Brant, Jr." Transcript at 4. Brant's counsel argued that the accounts were not Brant's accounts but belonged to the Garnishee Businesses. However, he also agreed that if the court determined that Brant did have ownership of the accounts, he would demonstrate that certain amounts were exempt from garnishment. The trial court then ruled that Krilich had proved that the accounts belonged to Brant. As a consequence, Ronald Schutz, the Treasurer for Brant Construction Management, Inc., who also is indirectly involved in the financial affairs of the remaining Garnishee Businesses, testified with regard to the activities and funding of the businesses. Following his testimony, the trial court ordered that a pro rata portion, based upon Brant's percentage ownership in the Garnishee Businesses, be garnished from the respective accounts.

Brant appealed the garnishment order to this court, and the trial court continued to determine the remaining issues.[5] In the later proceedings in the trial court, Krilich argued that he was entitled to Brant's ownership interests in all of the companies with which Brant had affiliation—those businesses previously designated as the "Business Entities" in footnote 3, *supra.* Brant challenged this claim to his ownership interests by arguing that a charging order was the sole method by which Krilich could acquire any of Brant's interests in the LLCs.[6] The trial court concluded the

---

5. The appeal of the garnishment order was brought as an interlocutory appeal of right according to Indiana Appellate Rule 14(A).

6. Brant himself did not challenge Krilich's ability to acquire Brant's interest in any Business Entities other than those organized as LLCs.

matter in Krilich's favor and ordered the transfer of Brant's ownership interests in the Business Entities to Krilich.

We begin by noting that the extremely complex nature of this appeal is due to the simple fact that certain assumptions were made about the Garnishee Businesses and the Business Entities by Krilich and the trial court without any proof as to their validity. The most important assumption was that the Garnishee Businesses and the Business Entities were the alter ego of Brant. However, no actual evidence was ever introduced with regard to this proposition. Rather, Krilich attempted to rely upon an opinion by Mercantile[7] that the accounts were Brant's accounts and Brant's admissions with respect to his ownership interests in the various businesses. Thus, our review of the proceedings below and our resolution of this case focuses upon the evidence actually introduced, or the lack thereof on important, dispositive issues, and will hopefully provide guidance to the trial court for the proper resolution of this case upon remand.

■ Following the domestication of the judgment and Brant's failure to satisfy it, Krilich initiated proceedings supplemental to execution. Proceedings supplemental concepts originate in equity. *Stuard v. Jackson & Wickliff Auctioneers, Inc.*, 670 N.E.2d 953, 955 (Ind.Ct.App.1996). These proceedings allow the creditor to discover assets, reach equitable and other interests not otherwise subject to levy and sale at law, and to set aside fraudulent conveyances. *Id.* The procedures set forth in Trial Rule 69 and in statutes are direct descendents of these equitable remedies. *Id.* Equity may be invoked to prevent one party from injuring another through fraud and deceit by declaring that as done which in good conscience ought to be done. *Id.*

Proceedings supplemental to execution are structured by Indiana Trial Rule 69. It states:

"(E) Proceedings supplemental to execution. Notwithstanding any other statute to the contrary, proceedings supplemental to execution may be enforced by verified motion or with affidavits in the court where the judgment is rendered alleging generally:

(1) that the plaintiff owns the described judgment against the defendant;

(2) that the plaintiff has no cause to believe that levy of execution against the defendant will satisfy the judgment;

(3) that the defendant be ordered to appear before the court to answer as to his non-exempt property subject to execution or proceedings supplemental to execution or to apply any such specified or unspecified property towards satisfaction of the judgment; and,

(4) if any person is named as garnishee, that garnishee has or will have

---

7. In arguing his position to the trial court, Krilich asserted that he had met his burden of proof that Brant owned the accounts by offering Mercantile's answer to the interrogatories as evidence. It is true that the answer to the interrogatories may be relied upon as evidence. *See Mann v. Russell's Trailer Repair, Inc.*, 787 N.E.2d 922, 929 (Ind.Ct.App.2003), *trans. denied.* However, just because Krilich offered and the trial court accepted as evidence the answer to the interrogatories in which Mercantile implied that Brant owned the accounts does not mean that Krilich necessarily met his burden of proof. The question whether Brant owned the accounts is one of interpretation of the law, and Mercantile was in no position to make such determinations. Rather, the trial court was obligated to consider all evidence admitted to determine whether the accounts belonged to Brant or the Garnishee Businesses.

specified or unspecified nonexempt property of, or an obligation owing to the judgment debtor subject to execution or proceedings supplemental to execution, and that the garnishee be ordered to appear and answer concerning the same or answer interrogatories submitted with the motion. If the court determines that the motion meets the foregoing requirements it shall, ex parte and without notice, *order the judgment debtor, other named parties defendant and the garnishee* to appear for a hearing thereon or to answer the interrogatories attached to the motion, or both.

The motion, along with the court's order stating the time for the appearance and hearing or the time for the answer to interrogatories submitted with the motion, shall be served upon the judgment debtor as provided in Rule 5, *and other parties and the garnishee shall be entitled to service of process as provided in Rule 4.* The date fixed for appearance and hearing or answer to interrogatories shall be not less than twenty [20] days after service. No further pleadings shall be required, and the case shall be heard and determined and property ordered applied towards the judgment in accordance with statutes allowing proceedings supplementary to execution. In aid of the judgment or execution, the judgment creditor or his successor in interest of record and the judgment debtor may utilize the discovery provisions of these rules in the manner provided in these rules for discovery

or as provided under the laws allowing proceedings supplemental." (emphasis supplied).

Trial Rule 69 clearly provides that more parties than just the judgment debtor and the garnishee defendant may be involved in proceedings supplemental. Here however, the assumption was that the Garnishee Businesses were the alter egos of Brant. Because of the assumption that the Garnishee Businesses were the alter egos of Brant, the Garnishee Businesses were not named as defendants and served with process.

■ Be that as it may, the Garnishee Businesses did file a replevin action after they learned that their checking accounts had been frozen by Mercantile as a result of the garnishment proceedings. The replevin action was consolidated with the proceedings supplemental filed by Krilich and then dismissed. Following dismissal of the replevin claim, the Garnishee Businesses remained parties to the action but were neither notified nor involved in any further proceedings. At oral argument, Krilich asserted that the Garnishee Businesses had knowledge of the hearing held upon the question of whether the bank accounts may be garnished.[8] However, it is also undisputed that they were never provided notice of the garnishment proceeding, named as parties, or provided the opportunity to take part in that hearing. The fact that they had been joined to the action for a different purpose did not provide them with the opportunity to protect their own interests.[9]

8. At the beginning of the hearing before the trial court, Patrick McEuen, the attorney for Brant, discussed the admission of certain letters into evidence. In so doing, he mentioned that he was the attorney who filed the replevin action. Thus, it is clear that Mr. McEuen was representing, in addition to Brant, the Garnishee Businesses, at least for a short period of time. However, it is equally clear and undisputed that the garnishment proceeding and the notice which were provided were directed solely at Brant personally.

9. We render no opinion as to whether the Garnishee Businesses are legitimate busi-

According to Trial Rule 69(E)(4), the garnishee and other parties should be provided notice in accordance with Trial Rule 4. There is no dispute that the Garnishee Businesses were not provided any notice even though the potential existed that the accounts did not belong to Brant. Consequently, the failure to provide the Garnishee Businesses notice and join them as parties to the garnishment proceeding so that they could defend their interests in the accounts renders the garnishment proceeding invalid as to the Garnishee Businesses' checking accounts. On remand, this error may be cured by notice to the Garnishee Businesses under Trial Rule 69 of any future proceedings supplemental.

■ When we turn to the second question of notice, namely whether the Business Entities should have received notice of the proceeding supplemental in which Krilich sought to receive Brant's ownership interests in the Business Entities, the reasoning and answer are the same.

A hearing was set for September 1, 2004 upon the matter of whether Brant should transfer his ownership interests in the Business Entities to Krilich. On August 27, 2004, Brant filed a motion to continue the hearing noting that the Business Entities were seeking separate counsel and contemplating a motion to intervene in the proceeding. From the record, it does not appear that the motion was ruled upon, or if it was, it was denied. In any event, the hearing was held as scheduled.[10] On September 23, approximately three weeks after the hearing was held, Brant filed a motion to add indispensable parties pursuant to Trial Rule 19. Brant asserts that the motion was denied. There does not appear to be such a ruling, but by implication it was denied on September 27, 2004 when the trial court ruled upon the motion for turnover and ordered that Brant's interests in several business entities be transferred to Krilich.[11]

We disagree with Krilich's argument that the Business Entities are not affected by the transfer of Brant's interests to Krilich. Pending appeal, Krilich himself has sought to add them as indispensable parties. The Business Entities have been indispensable parties all along; indeed, this is what the notice provisions of Trial Rule 69 contemplate. It is disingenuous to suggest that they are not affected by the transfer of the interests in them to Krilich.

In addition to the lack of notice to the Business Entities, their organizational structure as LLCs provides them protection from pure proceedings supplemental remedies. Through our research, it has become apparent that the issues before us

nesses or are the true owners of the checking accounts.

10. The trial court denied a motion made by Brant at the hearing in which he requested a continuance and explained that the Business Entities had counsel and wanted to take part in the proceedings.

11. Since the initiation of this appeal, Krilich himself has filed a motion to join the Business Entities as parties before the trial court. His grounds for joining them are that they are indispensable parties under Indiana Trial Rule 19. However, he asserts that they are indispensable only because he is now asking that the business entities be dissolved and that the owners receive their fair proportion of the assets after all creditors are paid. At oral argument, he opined that this is necessary only because the Business Entities have refused to recognize the court's order that Brant's interests in the Business Entities be transferred to Krilich. He has not changed his position that the Business Entities had no reason to take part in any prior proceeding upon the ground that the Business Entities were not affected by the transfer of Brant's interests.

are relatively novel in this State.[12] Nonetheless, we are not without some guidance as a few cases have dealt with issues similar to those present here. Of those cases, the most influential have dealt with corporations.

In *Lambert v. Farmers Bank*, 519 N.E.2d 745 (Ind.Ct.App.1988), this court was called upon to determine whether a trial court's conclusion that a corporation was the alter ego of a judgment debtor was correct so that the corporation's assets were subject to execution in satisfaction of personal debts. In 1983, Lambert, individually and as personal representative of Agricultural Aerial Applicators, Inc., entered into an agreement to borrow money from Farmers Bank of Frankfort, Indiana. As security for the loan, Lambert listed collateral securing other loans and his deposit accounts. After Lambert defaulted on the loan, the bank filed a complaint seeking the amount loaned as well as interest and attorney fees. An agreed judgment was entered and proceedings supplemental were conducted. After a writ of execution was entered, it was returned unsatisfied because Lambert's vehicles and other property were not titled in his own name. The bank then requested that the trial court determine ownership of assets and alleged that Lambert used several corporate entities to defraud creditors. The trial court concluded that Lambert exercised extensive control over the corporation entitled Lambert Enterprises, Inc., conducted corporate affairs without regard to corporate form, failed to distinguish between personal and corporate assets, and attempted to place his assets beyond reach of creditors by titling assets in the corporate name. Furthermore, the trial court found that the bank had relied upon Lambert's representations that he owned and controlled Lambert Enterprises, Inc. in extending credit to him. Thus, the trial court ruled that Lambert Enterprises, Inc. was the alter ego of Lambert and that the corporate assets were in fact personal assets which could be used to satisfy personal debts.

In reaching the decision upon appeal, this court noted the general principle that Indiana courts are reluctant to disregard corporate identity and do so only to protect third parties from fraud or injustice when transacting business with a corporate entity. *Id.* at 747. Furthermore, the separate existence of a corporation may be disregarded to prevent injustice when a third party transacts business with an individual who fraudulently uses a corporation as a shield from liability. *Id.* The third party must show both ownership and control of the corporation by the shareholder in order to disregard the corporation's separate existence under the alter ego theory. *Id.*

Under the evidence, this court agreed that Lambert Enterprises, Inc. was the alter ego of William Lambert. *Id.* Lambert had been a customer of the bank for several years, and six years prior to seeking the loan, he had submitted an individual financial statement wherein he included both personal and corporate assets and stated that he owned all the stock of Lambert Enterprises, Inc. Additionally, Lambert's list of assets included a helicopter, mobile home, trailer, Cessna aircraft, two automobiles, and miscellaneous office equipment and tools. Lambert did testify that ninety percent of the stock had been owned by his children for the past fifteen

---

12. At both the trial and upon appeal. Brant has failed to assert any argument with respect to any businesses organized as corporations, limited partnerships, and trusts. His reason for this failure is unclear. Nonetheless, his failures in this regard cannot be deemed to be binding upon the part of the various corporations, limited partnerships, or trusts.

years and that he had transferred the remaining ten percent in the year prior to seeking the loan. Nonetheless, the documents pertaining to the shareholders' meetings led to the conclusion that Lambert was the sole shareholder. *Id.* at 748. Moreover, an insurance policy in Lambert's name covered property which Lambert claimed was owned by the corporation. A real estate appraisal done in 1979 listed Lambert as the owner of property even though Lambert later claimed to own no property and merely used the property which was in his possession. This included living in a mobile home owned by the corporation and living on the second floor of one of the corporation's buildings. Finally, questions existed with regard to whether Lambert had received compensation from the corporation.

In affirming the conclusion that Lambert Enterprises, Inc. was the alter ego of Lambert, this court determined that the evidence tended to show that Lambert owned all the corporate stock, treated corporate assets as his own, used the corporation to procure goods and services for himself, and generally governed all the corporate affairs. *Id.* Essentially, the factual analysis was analogous to that used to pierce the corporate veil.

A corporation is a legal entity separate and distinct from its shareholders and officers. *Winkler v. V.G. Reed &*

*Sons, Inc.,* 638 N.E.2d 1228, 1231–32 (Ind. 1994). A court engages in a highly fact-sensitive inquiry when it exercises its equitable powers to pierce a corporate veil. *Id.* at 1232. In deciding whether a plaintiff has met the burden to pierce the corporate veil, the court considers whether the plaintiff has presented evidence showing: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporate shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.[13] *Aronson v. Price,* 644 N.E.2d 864, 867 (Ind.1994).

The statutes creating LLCs and Limited Liability Partnerships[14] ("LLPs") both provide protections similar to those for corporations. *See* Ind.Code 23–4–1 (Burns Code Ed. Repl.1999) (codification of Uniform Partnership Act) and Ind.Code 23–18 (Burns Code Ed. Repl.1999) (codification of Indiana Business Flexibility Act–Limited Liability Companies). In *Jackson v. Russell,* 533 N.E.2d 153 (Ind.Ct.App.1989), *cert. denied* 494 U.S. 1004, 110 S.Ct. 1297, 108 L.Ed.2d 474 (1990), this court reviewed a trial court's order that the part-

---

**13.** At the hearing before the trial court, Brant's counsel stated that the business checking accounts should be exempt from garnishment with the possible exception of the account for Brant Construction Management, Inc. This possible concession was made upon the fact that Brant is the sole shareholder and essentially was an acknowledgement that the trial court should have applied a piercing-the-corporate-veil analysis. Upon appeal, Krilich argues that the trial court could have found that the Business Entities were the alter egos of Brant, but does not focus upon this argument. Rather, Krilich maintains that the court need not have made the determination that the Business Entities were alter egos of Brant because the accounts were actually owned by Brant. The evidence does not support such a conclusion. Furthermore, we do not see how such a determination could be made without some analysis similar to piercing the corporate veil.

**14.** It is unclear how the partnerships in this case are organized or whether they are all organized under Indiana law.

nership interest[15] of C.W. Jackson in Jackson Plastics was a separate and distinct individual interest and subject to execution by Russell.[16] In that case, Jackson had a two million dollar judgment against him. Approximately two months after the judgment was entered, Jackson and his wife began transferring property and stock of various partnerships and corporations that they wholly owned among their various business interests. All of the transfers were done with little or no exchange of funds.

The trial court determined that a portion of the transfers were fraudulent. This court reviewed the determination and discussed the "badges of fraud" test which is used to identify occurrences indicative of a fraudulent intent on the part of those making the transfers. *Id.* at 155. This court determined that all of the post-judgment transfers were fraudulent. *Id.* The court then turned to the question of whether the interests in the business entities could be used to satisfy the judgment against Jackson.[17] Citing the Indiana Uniform Partnership Act, the court noted that a court may charge the interest of a debtor partner with payment of the unsatisfied amount of debt and may appoint a receiver of the partner's share of the profits. *Id.* The court also noted that the partner's interest is personal property. *Id.* at 156. The court then concluded that Indiana law makes a partnership interest subject to execution in satisfying judgments.[18] *Id.* The court then concluded that the shares of stock of Como Plastics, Inc., which was organized in Indiana, were also subject to execution by a judgment creditor.[19] *Id.* at 157.

Some law also exists with respect to acquiring assets from a trust during proceedings supplemental. In *Hinds v. McNair*, 235 Ind. 34, 129 N.E.2d 553 (1955), our Supreme Court, in reviewing matters related to a proceeding supplemental, held that a party seeking to obtain stock from a trust which had been created by a judgment debtor had the burden of proving that the stock was owned by the judgment debtor individually and not held by him as trustee, agent, or in some other capacity. 235 Ind. at 46, 129 N.E.2d at 561. Furthermore, because the judgment creditor had alleged that the trust was being used as a screen for actual ownership of the stock, the judgment creditor

---

15. From the discussion in the case, we presume that the partnership was organized as a general partnership.

16. The trial court also found that Russell did not have a lien on the shares of stock of Como Plastics, Inc., Lincoln Meadows Corp., or Excelarium Products Corp., all owned by Jackson and his wife, and those shares were not subject to execution.

17. It would appear that the finding of fraudulent activity was a prerequisite to determining whether the business interests could be used to satisfy the judgment debt. *Id.*

18. It is not clear as to the result of the conclusion that the shares were subject to execution, i.e. whether the interests were sold off, Russell received profits, or Russell was able to liquidate assets.

19. Indiana Code § 34–55–3–5 (Burns Code Ed. Repl.1998) specifically authorizes the levy upon and sale of shares of stock in a corporation or company. However, the question does exist with regard to whether the shares of stock of a corporation may be subject to execution if the shareholders have agreed to limit transferability of the shares, such as may be done with a closely held corporation. *Cf.* J. WILLIAM CALLISON & MAUREEN A. SULLIVAN, LIMITED LIABILITY COMPANIES A STATE-BY-STATE GUIDE TO LAW AND PRACTICE § 2:6 at 20 (2005) (noting that corporate stock is freely transferable unless reasonable restrictions agreed to by the shareholders). However, that issue was not before the trial court in the proceeding below and no argument was made with respect to it upon appeal so we only acknowledge its existence for future consideration.

had the burden of proving that fact and that the trust was wrongfully manipulated for the purpose of concealing assets owned by McNair, the judgment debtor. *Id.*

Those issues related to corporations, partnerships, and trusts aside, the biggest point of contention among the parties throughout this proceeding is whether Krilich may be awarded Brant's interests in the LLCs. The simple answer is "Yes." Nonetheless, that interest is much more limited than that sought by Krilich. Indeed, that interest is limited to economic interests and nothing more.

Article 18 of Title 23 of the Indiana Code (Burns Code Ed. Repl.1999), known as the Indiana Business Flexibility Act, controls the creation and operation of LLCs in Indiana. Indiana Code § 23–18–6–2 states that the "interest of a member in a limited liability company is personal property."

Krilich argues that because the interest in an LLC is personal property, it is subject to execution and a charging order is not the sole remedy for a judgment creditor, as argued by Brant, in seeking to satisfy a judgment against an owner of an LLC. Once again, we have little argument with Krilich's position although the execution against the interest in an LLC would be indistinguishable from a charging order against an LLC because of the limitation of the term "interest" by the General Assembly.

Indiana Code § 23–18–1–10 defines "[i]nterest" as a "member's economic rights in the limited liability company, including the member's share of the profits and losses of the limited liability company and the right to receive distributions from the limited liability company." Thus, while personal property is subject to execution according to Indiana Code § 34–55–8–2 (Burns Code Ed. Repl.1998), the interest here is limited by I.C. § 23–18–1–10 to the economic rights and nothing more.[20] Through execution Krilich may not receive any of Brant's rights to participate in management, nor may Krilich inspect the books or records of the LLCs. *See* CALLISON, § 4:5 at 59 (stating that judgment creditors obtain no right to participate in management, inspect the books or records, or to force a sale of the membership interest).

The effect of this is essentially that a charging order is the only remedy for a judgment creditor against a member's interest in an LLC. Indiana Code § 23–18–6–7 states that a judgment creditor may seek a charging order upon application to the court. To the extent a charging order is granted, the judgment creditor has only the rights of an assignee of the member's interest in the LLC. Consequently, in any future proceeding, Krilich is not entitled to Brant's membership in any LLC but may be able to receive a charging order against Brant's interest.[21]

Because the Garnishee Businesses and the Business Entities were not named as

---

**20.** Indiana Code §§ 23–18–6–3 through 6 discuss the limitations on the assignability of interests in an LLC and the right to withdraw from an LLC. Indiana Code §§ 23–18–6–3 to 4 explicitly state that unless the operating agreement provides otherwise, an assignee only becomes a member of an LLC if the other members unanimously consent. There is no reason why our courts should disregard the intent of the General Assembly to protect the close-knit structure of a LLC and violate

the other members' interests and rights by declaring that they must accept a judgment creditor of a member into full membership with all the rights appurtenant thereto when the judgment debtor could not transfer those rights himself.

**21.** This conclusion applies solely to LLCs organized under the laws of the State of Indiana.

parties to the proceedings supplemental and were not provided notice of the proceedings or allowed to participate in them, the garnishment of their bank accounts or the transfer of the interests in them, respectively, is invalid. If further proceedings are conducted, they should proceed in a manner not inconsistent with this decision.

The orders arising from the proceedings supplemental are reversed. Also, we order Krilich to keep the funds at issue in a separate interest bearing account until the final disposition of the garnishment matter.

BAILEY, J., and MATHIAS, J., concur.