**Frank R. ZOKAITES, Appellant**

v.

**PITTSBURGH IRISH PUBS, LLC and Colm McWilliams, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 24, 2008.
Filed Dec. 11, 2008.

Jeffrey A. Hulton, Pittsburgh, for appellant.

Kurt L. Sundberg, Erie, for appellees.

BEFORE: KLEIN, POPOVICH and FITZGERALD *, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Frank R. Zokaites appeals the order denying his Motion to Compel Member Interest to Sheriff as Trustee for Sale to Satisfy Judgment (Motion to Compel), which judgment was entered against Appellees Pittsburgh Irish Pubs, LLC and Colm McWilliams.[1] We affirm.

---

* Former Justice specially assigned to Superior Court.

1. Appellant is seeking to execute on certificates of ownership that Appellee McWilliams

¶ 2 A review of the record establishes the following undisputed facts; to-wit:

On November 21, 2005 [Appellant] obtained a judgment against [Appellees].[n. 1] On April 2, 2007, [Appellant] filed a writ of execution and unsuccessfully attempted to collect his judgment. Thereafter, on September 4, 2007 [Appellee] Pittsburgh Irish Pubs, LLC filed for bankruptcy under Chapter 11.

In an attempt to collect the outstanding judgment from [Appellee] Colm McWilliams, on September 24, 2007 [Appellant] presented to th[e trial c]ourt a Motion to Compel [ . . . ]. The Motion sought to compel [Appellee] Colm McWilliams to transfer his 20.5% outstanding member interests in [Appellee] Pittsburgh Irish Pubs, LLC and Molly Brannigans, LLC to the Allegheny County Sheriff for levy and sale. On September 24, 2007, th[e trial c]ourt granted the Motion to Compel and ordered [Appellee] McWilliams to transfer his member interests in [Appellee] Pittsburgh Irish Pubs, LLC and Molly Brannigans, LLC to the Sheriff.[n. 2] The Order noted that no one for [Appellees] appeared to contest the motion.

On October 3, 2007, [Appellee] McWilliams filed a Motion for Reconsideration of th[e trial c]ourt's September 24, 2007 Order. Subsequently, th[e trial c]ourt granted the Motion for Reconsideration and vacated the order of September 24, 2007. Oral argument on the underlying Motion to Compel was held for October 4, 2007. At argument, bankruptcy attorney for [Appellee] Pittsburgh Irish Pubs informed th[e trial c]ourt of his intention to file a motion for extension of the automatic stay to [Appellee] Colm McWilliams in Bankruptcy Court. Based upon the representation of bankruptcy counsel for [Appellee] Pittsburgh Irish Pubs that the Motion to Extend the Stay would be immediately filed with the Bankruptcy Court, th[e trial c]ourt deferred a decision on the merits regarding the underlying Motion to Compel pending a decision by the Bankruptcy Court regarding the stay.

On November 27, 2007, Jeffrey A. Deller, United States Bankruptcy Judge for the Western District of Pennsylvania, entered an order denying [Appellee] Pittsburgh Irish Pubs' Motion to Extend the Automatic Stay to [Appellee] McWilliams. Th[e trial c]ourt then scheduled re-argument on the Motion to Compel for February 11, 2008.[n. 3]

After argument on February 11, 2008 and consideration of the briefs filed by the parties, th[e trial c]ourt entered an order denying the motions to compel member interest on February 12, 2008.[n. 4].

---

[n. 1] A Complaint in Confession of Judgment was filed by [Appellant] against [Appellees] in the amount of $121,980.50 plus continuing interest.

[n. 2] The Order further provided that if the original member interests have not been issued or cannot be found or located within 5 days from the date of this order, [Appellee] McWilliams is directed to execute an affidavit

has in the entities known as Molly Brannigans, LLC and Appellee Pittsburgh Irish Pubs, LLC, the former of which is the entity that owns and operates the restaurant, while Appellee Pittsburgh Irish Pubs, LLC owns the real estate upon which the restaurant is located. Appellee McWilliams owns 20.5% of the outstanding member interests in both of these entities.

It would appear that Appellee McWilliams persuaded Appellant to be an investor and also to make a loan to Appellee Pittsburgh Irish Pubs, LLC in the amount of $100,000.00. The loan was guaranteed by Appellee McWilliams. When Appellee Pittsburgh Irish Pubs, LLC defaulted on the loan, Appellant obtained a judgment by confession against Appellees in the amount of $121,980.50. Appellant's brief, at 6.

to that effect and directed to cause [Appellee] Pittsburgh Irish Pubs, LLC and Molly Brannigans, LLC to issue the original certificates or to issue replacement certificates and to transfer the certificates to the Sheriff for levy and sale. Further, it was ordered that [Appellee] McWilliams shall be held in contempt of Court upon his failure to perform the foregoing acts and that the Allegheny County Sheriff is directed to enforce this Order an[d] to take [Appellee] McWilliams into custody and to transport[ ] him to th[e trial c]ourt for further contempt proceedings.

[n. 3] On February 1, 2008 [Appellant] filed another Motion to Compel [Appellee] McWilliams' Member Interest Transfer in Erie Irish Pubs, LLC and requested that the [trial c]ourt[ ] consider the Motion in conjunction with the previously filed Motion to Compel Member Interests in [Appellee] Pittsburgh Irish Pubs, LLC and Molly Brannigans, LLC.

[n. 4] This Order encompassed both the Motion to Compel Member Interests in [Appellee] Pittsburgh Irish Pubs, LLC and Molly Brannigans, LLC and the Motion to Compel Member Interest Transfer in Erie Irish Pubs, LLC.

Trial court opinion, 4/28/08, at 1–4, n. 1–4. Thereafter, on February 13, 2008, the order denying Appellant's Motion to Compel was entered upon the docket pursuant to Pa.R.A.P. 301(a) **(Requisites for an Appealable Order–Entry upon docket below)**. On March 5, 2008, Appellant filed a notice of appeal, which was followed by a Pa.R.A.P. 1925(b) statement on March 18, 2008, raising the question: "Whether the [trial c]ourt erred in holding that Pennsylvania law does not permit the [trial] court to compel the transfer of the member interest of a member of a limited liability company to the Sheriff for sale to satisfy a judgment against the member of the limited liability company?" Appellant's brief, at 2.

¶ 3 In the process of unraveling the rights and obligations of Appellees against those of their creditors, we are guided by the principles set forth in the Statutory Construction Act of 1972, 1 Pa.C.S.A. §§ 1501–1991. *See Hoffa v. Bimes,* 954

A.2d 1241, 1244 (Pa.Super.2008); *McCance v. McCance,* 908 A.2d 905, 908 (Pa.Super.2006). Further, inasmuch as the present case involves Appellee McWilliams' interest in various limited liability companies, the provisions of Pennsylvania's Limited Liability Company Law[2] will be examined to resolve the matter at hand. *See Goldberg v. Winogradow,* 2006 WL 3041979, *2, 2006 Conn.Super. Lexis 3067, *5 (filed October 12, 2006) (In assessing plaintiffs' claim "seeking to satisfy their judgment through an order charging the defendant's L[imited] L[iability] C[ompany] interests, analysis of the plaintiffs' claims must be made not only in the context of [Connecticut] *General Statutes § 52–356b,* but also based on the limitations and guidelines set forth in the act."). Lastly, in uncovering the intent of the General Assembly in enacting Chapter 89 (Limited Liability Companies), we may look to the Committee Comments to Chapter 89, which are intended to form the legislative history and be citable as such pursuant to 1 Pa.C.S.A. § 1939. *See* 15 Pa.C.S.A. § 8901 **(Committee Comment—1994)**.

¶ 4 15 Pa.C.S.A. § 8924(a) defines "interest" of a member in a limited liability company as the "personal estate of the member and may be transferred or assigned as provided in writing in the operating agreement." At first glance, it would appear that a member has *carte blanche* to transfer or assign his "interest" in a limited liability company. But the subsection cautions, "Unless otherwise provided in writing in the operating agreement, if all of the other members of the company other than the member proposing to dispose of his interest do not approve of the proposed transfer or assignment by unanimous vote or written consent, which approval may be unreasonably withheld by any of the other mem-

**2.** The Act of December 7, 1994, P.L. 703, No. 106, § 4, 15 Pa.C.S.A. § 8901 *et seq.*

bers, the transferee of the interest of the member shall have no right to participate in the management of the business and affairs of the company or to become a member. The transferee shall only be entitled to receive the distributions and the return of contributions to which that member would otherwise be entitled." 15 Pa. C.S.A. § 8924(a). In the Comment immediately following Section 8924, we are further advised:

> *Unlike the Prototype Limited Liability Company Act, Chapter 89 does not define what a membership interest includes. Subsection (a) makes clear that a membership interest includes both economic rights and also rights to participate in the management of the business. If the nontransferring members do not unanimously approve of the transfer of a membership interest, the interest is divided into its economic rights (which are transferred) and its governance rights (which are not transferred). The implication is that if the other members do approve, a transfer of a membership interest will convey both the economic and the governance rights. See also 13 Pa.C.S.[A.] § 9318(d) and 15 Pa. C.S.[A.] § 8948.*

> *Subject to a contrary agreement, a member can freely transfer only economic rights.* Since the defined phrase "unless otherwise provided" is used in the second sentence of subsection (a), the contrary agreement may either relax that rule (e.g., permitting a transfer of governance rights without unanimous consent) or further restrict transfer (e.g., restricting the ability to transfer even economic rights).

> \* \* \* \*

> *By providing that a transfer or assignment does not convey governance rights absent unanimous consent, subsection (a) is intended to mean that generally all other rights of the member are transferred.* Thus the transferee should ordinarily receive all tax benefits and burdens of a membership interest under flow-through taxation, including allocations of income, gain, loss, deductions and credits.

> The "right to participate in the management of the business" that is retained by a member upon a nonapproved transfer is intended to include the right to vote, as well as rights to information and to compel dissolution of the company, and none of those rights will be available to the transferee. Some companies may wish to consider giving assignees a right to compel winding up to prevent them from being completely frozen in, and a right to information assignees need for tax purposes and to protect them from unfair dealing by the members. Alternatively, the assignor and assignee can contract or coordinate regarding the exercise of the retained rights of the assignor.

> The provisions on transfer or assignment of a membership interest that the first sentence of subsection (a) authorizes to be set forth in writing in the operating agreement are intended to include, among other things, all of the provisions that the Delaware Limited Liability Company Act authorizes to be set forth in the limited liability company agreement of a Delaware limited liability company. 6 Del.Code § 18–101(7)a [ . . . ].

15 Pa.C.S.A. § 8924 **(Amended Committee Comment (2001))** (Supp. 2008) (emphasis added).

¶ 5 As is evident from a plain reading of the Section 8924 and the comments thereto,[3] a membership interest in a limit-

---

**3.** 1 Pa.C.S.A. § 1921(b) states that when in-

terpreting a statute whose words are clear

ed liability company encompasses both economic rights (flow-through of monies and tax consequences) and governance rights (participation in the management of the business). Furthermore, Section 8924 proscribes the transfer of a member's interest unless the non-transferring members approve the transaction. Absent unanimous approval, the member's interest is divided into economic rights (which are transferred) and governance rights (which are not transferred). Subject to a contrary operating agreement, a member can freely transfer only economic rights.

¶ 6 Herein, albeit not privy to the operating agreement of Appellee McWilliams' limited liability companies, Appellant advises, "The Operating Agreement[ ] of [. . . Appellee] Pittsburgh Irish Pubs, LLC provide[s] that in a case of involuntary transfer of a member's interest, there is a right of first refusal for the company to purchase the interest, thus precluding the interests being levied upon, delivered to the Sheriff and sold at execution proceedings." Appellant's brief, at 4. This translates into a proposition where, as here, the judgment creditor (Appellant) attempts to obtain a debtor's interest in a limited liability company and the resulting interest is divided in two—Appellant obtains the economic rights and the member-debtor (Appellee McWilliams) retains the governance rights. *See* Trial court opinion, 4/28/08, at 5.

¶ 7 There is a dearth of cases in this jurisdiction interpreting the scope of Pennsylvania's Limited Liability Company Law. Notwithstanding such a fact, we are not without guidance as our sister states have dealt with an issue similar to the one presented here. Of those cases, the most influential is *Brant v. Krilich*, 835 N.E.2d 582 (Ind.Ct.App.2005), which dealt with

Appellant Brant's appeal of the trial court's decision that, *inter alia,* Appellee Krilich was entitled to Appellant's ownership interest in several limited liability companies (LLCs). It appears that Krilich and Brant entered into an agreement with respect to a shopping center in Florida, which Krilich agreed to purchase in return for a guarantee from Brant that the shopping center would produce an amount equal to 9–1/2% of Krilich's 80% investment. When the shopping center failed, Krilich filed a complaint against Brant in Florida in the amount of $2,310,367.51 plus interest. The parties dismissed the complaint by stipulation, but it was reinstated by agreement on March 26, 1997. Almost two-and-one-half years later, each party filed motions for summary judgment. Krilich's motion was granted and subjected Brant's personalty to attachment and garnishment to satisfy the judgment. Brant's cross-motion was also granted to deny Krilich a lien against Brant's real estate. On appeal, the Court of Appeals of Indiana determined that the trial court erred in concluding that Krilich could not maintain a lien against Brant's real property in Indiana with the domestication of the Florida judgment. However, as is herein relevant,

[T]he biggest point of contention among the parties throughout this proceeding is whether Krilich may be awarded Brant's interests in the LLCs. The simple answer is "Yes." Nonetheless, that interest is much more limited than that sought by Krilich. Indeed, that interest is limited to economic interests and nothing more.

*Article 18 of Title 23 of the Indiana Code* (Burns Code Ed. Repl. 1999), known as the Indiana Business Flexibili-

---

and free from ambiguity, one may not disregard the letter of the statute under the pretext

of pursuing its spirit.

ty Act, controls the creation and operation of the LLCs in Indiana. Indiana Code § 23–18–6–2 states that the "interest of a member in a limited liability company is personal property."

Krilich argues that because the interest in an LLC is personal property, it is subject to execution and a charging order is not the sole remedy for a judgment creditor, as argued by Brant, in seeking to satisfy a judgment against an owner of an LLC. Once again, we have little argument with Krilich's position although the execution against the interest in an LLC would be indistinguishable from a charging order against an LLC because of the limitation of the term "interest" by the General Assembly.

*Indiana Code* § 23–18–1–10 defines "interest" as a "member's economic rights in the limited liability company, including the member's share of the profits and losses of the limited liability company and the right to receive distributions from the limited liability company." Thus, while personal property is subject to execution according to Indiana Code § 34–55–8–2 (Burns Code Ed. Repl. 1998), the interest here is limited by I[ndiana] C[ode] § 23–18–1–10 to the economic rights and nothing more. Through execution Krilich may not receive any of Brant's rights to participate in management, nor may Krilich inspect the books or records of the LLCs. **See** CALLISON, § 4:5 at 59 (stating that judgment creditors obtain no right to participate in management, inspect the books or records, or to force a sale of the membership interest).

The effect of this is essentially that a charging order is the only remedy for a judgment creditor against a member's interest in an LLC. *Indiana Code § 23–18–6–7* states that a judgment creditor may seek a charging order upon application to the court. To the extent a charging order is granted, the judgment creditor has only the rights of an assignee of the member's interest in the LLC. Consequently, in any future proceeding, Krilich is not entitled to Brant's membership in any LLC but may be able to receive a charging order against Brant's interest[, which relates to his economic stake in the LLCs and not a management role].

*Brant,* 835 N.E.2d at 592 (footnote omitted); *accord Goldberg, supra,* 2006 WL 3041979, at *2, 2006 Conn.Super. Lexis 3067, at *5 (In an effort to collect a judgment, plaintiffs filed an application with court seeking an order that defendant turn over to a levying officer his shares in two limited liability companies; court refused: "The plaintiffs are attempting to assume the defendant's ownership, rather than just the shares or profits to which the defendant may be entitled. The transfer of an ownership interest entails participation in the 'management and affairs' of the L[imited] L[iability] C[ompany]. This request is specifically proscribed by the language of [Connecticut] General Statutes § 34–170(a)(3). Because the plaintiffs are seeking an ownership interest, rather than merely [...] the right of an assignee of the defendant's profits, the plaintiffs' requests exceed the scope allowable for a charging order under General Statutes § 34–171. Consequently, this court denies [the plaintiffs'] application for order in aid of execution.").

¶ 8 It is manifest from reading Pennsylvania's Limited Liability Company Law, and the decisions of our sister states interpreting similar laws, that the purpose sought by our Legislature in promulgating our limited liability company statute was to preclude a judgment creditor from securing more than repayment of his debt by means of a "charging order," which is the remedy for a judgment creditor against a

member's interest in a limited liability company. *See* Trial court opinion, 4/28/08, at 6, n. 5 ("[H]ere a transfer of [Appellee] McWilliams' actual certificates and rights to participate in the management of the limited liability companies to [Appellant] would be inappropriate. [Appellant's] proper remedy is to seek an order from th[e trial c]ourt for the distributions and the return of contributions to which [Appellee] McWilliams is entitled to from the L[imited] L[iability] C[ompanie]s[–This remedy is equatable to the charging order provided by Pennsylvania's Partnership and Limited Partnership statutes. 15 Pa. C.S.A. § 8345; 15 Pa.C.S.A. § 8563].");
*see also Brant,* 835 N.E.2d at 592; *PB Real Estate, Inc. v. DEM II Properties,* 50 Conn.App. 741, 719 A.2d 73, 74 (1998) (After obtaining a deficiency judgment resulting from a mortgage foreclosure against defendants, plaintiff applied, pursuant to state statutes, for a charging order directed to a limited liability company; plaintiff was attempting to satisfy judgment from payments becoming due to individual defendants, each of whom owned a share of limited liability company).

¶ 9 Appellant cites *Gulf Mortgage and Realty Investments v. Alten,* 282 Pa.Super. 230, 422 A.2d 1090 (1980), to buttress the contention that a transfer of Appellee McWilliams' membership interest in his limited liability companies is the appropriate remedy in this case. We think not.

¶ 10 The question posed in *Gulf Mortgage* was whether a judgment creditor may execute upon the shares of stock of a professional corporation involved in the

practice of law. This Court held that the shares of the professional corporation were not exempt specifically from levy and execution by the provisions of Pennsylvania's professional corporation law. On the contrary, although Pennsylvania's professional corporation law may have prevented unlicensed persons from exercising control of shares obtained by judicial sale, it did not prevent the shares from being seized and sold to licensed persons or back to the corporation, or otherwise disposed of upon dissolution of the corporation. To hold otherwise would have been contrary to the public policy that debtors should pay their debts. *Gulf Mortgage,* 422 A.2d at 1097.

¶ 11 Herein, in contrast to *Gulf Mortgage,* Pennsylvania Limited Liability Company Law prohibits transferring or assigning a member's interest without the unanimous approval of other members of the company. When such approval is not forthcoming, a judgment creditor is still entitled to the debtor-member's economic rights (which are transferable) to satisfy the member's indebtedness by seeking an order of court for the distributions and the return of contributions which Appellee McWilliams is entitled to from his limited liability companies. *See* 15 Pa.C.S.A. § 8924(a), **Amended Committee Comment (2001)** (Supp. 2008).[4] When Appellant attempts to expand his recoupment efforts from one of just securing economic rights to also obtaining governance rights, we find this approach proscribed when viewed against the backdrop of Pennsylvania's Limited Liability Company Law and

---

4.  15 Pa.C.S.A. § 8924 expounds upon the limitations on the assignability or transferability of interests in a limited liability company, as well as explicitly stating that unless the operating agreement provides otherwise, an assignee or transferee only becomes a member of a limited liability company if the other members consent unanimously. There is no justification for this Court to ignore the intent

of our Legislature to protect the close-knit structure of a limited liability company and violate the other members' interests and rights by declaring that they must accept a judgment creditor of a member into full membership with all the rights appurtenant thereto when the judgment debtor could not transfer those rights himself. *See also Brant,* 835 N.E.2d at 592 n. 20.

applicable case law. *See Brant; Goldberg, supra.*

¶ 12 Accordingly, we affirm the order denying Appellant's Motion to Compel the transfer/assignment of Appellee McWilliams' member-interest in his limited liability companies to the sheriff for sale.

¶ 13 Order affirmed.